STATE OF CONNECTICUT *v.* ANDERSON VAZQUEZ
(AC 24262)

Dranginis, Bishop and Mihalakos, Js.

Argued November 29, 2004—officially released March 8, 2005

*Martin Zeldis*, assistant public defender, with whom, on the brief, were *Moira L. Buckley*, former assistant public defender, and *Brad Buchta* and *Jennifer Neal*, certified legal interns, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Joseph T. Corradino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Anderson Vazquez, appeals from the judgment of conviction, following a jury trial, of one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4). On appeal, the defendant claims that the trial court improperly (1) failed to charge the jury on the definition of intent, an element of the underlying crime of larceny, (2) admitted into evidence an identification of him that was made pursuant to unnecessarily suggestive police procedures, (3) admitted the fruits of a search conducted in violation of his fourth amendment rights and (4) failed to conduct an inquiry into a possible jury taint. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of September 2, 2002, the defendant placed a telephone call from his home to Pizza Valley restaurant. He ordered a large pepperoni pizza and a two liter bottle of soda, and he directed the delivery to 761 Grand Street in Bridgeport. He purported to give his telephone number to the restaurant. It later was discovered that the number did not correspond to the number that registered on the restaurant's caller identification box.[1] The staff at the restaurant recorded the order, the delivery address, the telephone number given and the cost of the order on the front of the pizza box. The victim, Radesh Kanniganti, drove to the address indicated on the front of the box to deliver the order. He sounded his vehicle's horn at the designated address and then saw someone, whom he later identified as the defendant, approach him from the alley between 761 and 775 Grand Street.[2] The victim left his car, holding the pizza box and the soda bottle. He tried to hand the defendant the soda bottle, but the defendant grabbed at the pizza box instead. A tussle for the pizza box ensued, and the victim fell to the ground, the defendant having gained possession of the pizza box. The defendant then demanded money from the victim, and the victim noticed that the defendant was pointing a small black gun at him. The victim gave the defendant the $55 in his pocket, and the defendant ran back into the alley. The victim returned to his car and sounded the horn several times. He then returned to the restaurant where he told his employer to call the police because he had been robbed.

The police arrived at the restaurant shortly thereafter and recovered the defendant's telephone number from

---

[1] Apparently, the number the defendant gave as his actually belonged to another restaurant in the city.

[2] The defendant resided at 775 Grand Street, which shared the alley with 761 Grand Street.

the caller identification box. The box identified the defendant as the person to whom the number was registered with the telephone company. The police escorted the victim to the police station to make an identification from a computerized array of photographs. They also broadcast a description of the perpetrator over the police radio. The victim, after looking through numerous photographs, identified the defendant as the perpetrator. The police then drove the victim by the defendant's home, where the defendant was being escorted outside by police officers, and the victim again identified the defendant as the perpetrator. Prior to that identification, police had obtained the consent of the defendant's girlfriend to search for a gun in the apartment in which the couple lived. During the search, the police saw the defendant halfway hidden under a bed and seized $55 in cash lying on a dresser near the defendant. The defendant's girlfriend then withdrew her consent, and the police ceased the search of the apartment's interior. The police conducted a search of the backyard and uncovered a Pizza Valley pizza box with two slices of fresh pizza inside. The receipt on the box indicated that it was the stolen pizza box. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly failed to charge the jury on the definition of intent, one of the elements of the crime of larceny.[3] The defendant concedes that he did not preserve his claim at trial and requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). His claim is reviewable under *Golding* because the record is adequate for review and the claim of instructional error is of constitu-

---

[3] Robbery is defined in our Penal Code as larceny with the use or the threatened immediate use of physical force. General Statutes § 53a-133.

tional magnitude.[4] See *State* v. *Denby*, 235 Conn. 477, 483, 668 A.2d 682 (1995). With regard to the third prong of *Golding*, the state concedes that the court did not instruct the jury on the definition of intent and focuses its argument instead on the harmlessness inquiry incorporated into *Golding*'s fourth prong.[5]

"[A] jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence,* such that the jury verdict would have been the same absent the error . . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 738, 759 A.2d 995 (2000), citing *Neder* v. *United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). In determin-

---

[4] "In *Golding*, our Supreme Court held that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original; internal quotation marks omitted.) *State* v. *Jordan*, 64 Conn. App. 143, 150, 781 A.2d 310 (2001).

[5] The court instructed the jury: "For you to find the defendant guilty of [robbery in the first degree], the state must prove beyond a reasonable doubt that the defendant committed a robbery as defined by statute. [General Statutes §] 53a-133 of the Penal Code defines robbery as follows: A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids—which aids in the commission of the larceny. A person commits larceny with intent—when, with intent to deprive another person—another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."

ing whether the defendant contested the omitted element, we do not look at the charge in a vacuum, but rather in the context of the whole trial. See, e.g., *State v. Davis*, 255 Conn. 782, 794–96, 772 A.2d 559 (2001), *State v. Montgomery*, supra, 254 Conn. 738; *State v. Barksdale*, 79 Conn. App. 126, 132–37, 829 A.2d 911 (2003); *State v. Feliciano*, 74 Conn. App. 391, 404–406, 812 A.2d 141 (2002), cert. denied, 262 Conn. 952, 817 A.2d 110 (2003).

The following additional facts, therefore, are necessary for our resolution of the defendant's claim. The defendant presented his case solely through cross-examination of the state's witnesses. The thrust of his defense was that the victim had identified the wrong man as the perpetrator. The defendant argued his theory of the case first during opening statements, when defense counsel stated: "Just briefly, it is the defendant's contention that they have the wrong man. There is a misidentification by [the victim]. And we think the defense can show through cross-examination, as well as other things, that there would be evidence that will lead you to believe that there is a reasonable doubt that the defendant isn't the man." That theory of the case was reflected throughout the cross-examination of the state's witnesses and again during closing arguments to the jury. At no time did the defendant contest the fact that the victim had been robbed; he merely contested that he was the perpetrator. The evidence that a robbery took place was patent and undisputed. Because the defendant did not contest that the victim was robbed and because the jury found beyond a reasonable doubt that the defendant was the perpetrator, the court's failure to instruct on the definition of intent, which pertained to the issue of whether a robbery had occurred and not to the identity of the perpetrator, was harmless beyond a reasonable doubt.

## II

The defendant next claims that the court improperly admitted into evidence the victim's prior identification of the defendant as the perpetrator. Specifically, the defendant claims that the police procedures by which the victim identified the defendant were unnecessarily suggestive and, therefore, the admission of the victim's prior identification of the defendant violated the right to a fair trial. Prior to trial, the defendant filed a motion to suppress the victim's out-of-court identification of him on the ground that the procedures used were unnecessarily suggestive. The court held a hearing on the motion during which the victim testified that he had first identified the defendant through a computerized array of photographs at the police station and that he had viewed approximately 300 photographs in that array. That identification process took place within two hours of the robbery, and during the robbery, the victim came within an arm's length of the perpetrator. The victim also testified that the identification procedure at the police station was interrupted when he was taken to a location in Bridgeport to make a one-on-one identification of someone other than the defendant. The victim did not identify that other suspect as the individual who had robbed him. The victim testified that he returned to the computerized array of photographs and identified the defendant as the perpetrator. The police then took him to the defendant's home where he subsequently identified the defendant in a one-on-one procedure. The court heard some conflicting testimony from a police officer who testified that he took the victim to the one-on-one identification of the defendant directly after the one-on-one identification of the other suspect. On further questioning from both the prosecutor and defense counsel, the victim testified that he could not recall exactly when he identified the defendant from the photograph, but he knew he did not view more

photographs after he had identified the defendant in the one-on-one identification procedure.

We first set forth our standard of review. "Upon review of a trial court's denial of a motion to suppress, [t]he court's conclusions will not be disturbed unless they are legally or logically inconsistent with the facts. . . . [W]e will reverse the trial court's ruling [on evidence] only where there is abuse of discretion or where an injustice has occurred . . . and we will indulge in every reasonable presumption in favor of the trial court's ruling. . . . Because the inquiry into whether evidence of pretrial identification should be suppressed contemplates a series of factbound determinations, which a trial court is far better equipped than this court to make, we will not disturb the findings of the trial court as to subordinate facts unless the record reveals clear and manifest error." (Internal quotation marks omitted.) *State* v. *Nogueira*, 84 Conn. App. 819, 823–24, 856 A.2d 423 (2004). "[B]ecause the issue of the reliability of an identification involves the constitutional rights of an accused [however] . . . we are obliged to examine the record scrupulously to determine whether the facts found are adequately supported by the evidence and whether the court's ultimate inference of reliability was reasonable. . . . [T]he required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. . . . To prevail on his claim, the defendant has the burden of showing that the trial court's determinations of suggestiveness and reliability both were incorrect. . . . An identification procedure is unnecessarily suggestive only if it gives rise to a very substantial likelihood of irreparable misidentification." (Internal quotation

marks omitted.) *State* v. *Harris*, 85 Conn. App. 637, 648–49, 858 A.2d 284, cert. denied, 272 Conn. 901, 863 A.2d 695 (2004).

In this instance, the court found that the victim had identified the defendant from among 300 photographs of individuals similar in appearance and that the victim was not urged to pick out the defendant's photograph from the other photographs by police suggestion. That determination necessarily required the court to find that the victim identified the defendant from the photographs prior to the one-on-one identification. There is substantial evidence in the record to support that factual finding, and we conclude, therefore, that the procedure for the victim's identification of the photograph of the defendant was not unnecessarily suggestive.[6] Because we conclude that the identification procedure was not unnecessarily suggestive, we do not need to address its reliability. See *State* v. *Gardner*, 85 Conn. App. 786, 791, 859 A.2d 41 (2004). The court properly denied the defendant's motion to suppress the victim's out-of-court identification of him.

III

The defendant's third claim is that the court improperly admitted the fruits of a police search of his home

---

[6] During oral argument, the state claimed that the victim's one-on-one identification of the defendant served only to bolster his previous identification of the photograph of the defendant and, therefore, was not the proper focus for our inquiry. While we agree with the state, in this instance, that any suggestibility in the one-on-one identification was insufficient to negate the victim's previous identification of the defendant, we stress that the inherent level of suggestiveness and susceptibility to misidentification that a one-on-one show-up places on the identification process cautions that its use should be limited to those situations in which the procedure is necessary. Here, the defendant was being taken into custody, and a subsequent identification could have been made in a lineup or other less suggestive circumstances than one in which the defendant is being escorted out of his home surrounded by police with a spotlight shone on him. We note this despite the fact that the victim in this case had been presented previously with a potential suspect whom he was able to say was not the perpetrator.

where the search was not made pursuant to a warrant and where the police did not have valid consent. We disagree with the defendant's claim that the consent the police obtained from the defendant's girlfriend was invalid for purposes of the search and, therefore, conclude that the court properly admitted the fruits of that search.

The following additional facts are necessary for our resolution of the defendant's claim. At approximately midnight on the evening of the robbery, Jeremy DePietro, a detective with the Bridgeport police department, went to the defendant's home to conduct a follow up investigation. He, and the three officers who accompanied him, had received the defendant's address from other officers involved in the investigation of the robbery. He went to the defendant's home for the explicit purpose of finding the defendant and recovering a firearm or other evidence related to the robbery. When DePietro arrived at the defendant's residence, the door was answered by Michelle Rosado, the defendant's girlfriend. She told DePietro that she lived in the apartment and was the renter of the apartment. DePietro also observed several children, whom Rosado identified as hers, running out of one of the bedrooms. DePietro asked who else was in the home at the time, and Rosado stated that she was with her children and that no other adults were present in the home. DePietro then explained to Rosado that he had reason to believe that a firearm was in the home and requested that she give her consent to look for the firearm. She agreed and signed a handwritten consent form that DePietro prepared. Several minutes into the search, DePietro discovered the defendant partially hidden under a bed in one of the bedrooms. DePietro and the other officers patted down the defendant for weapons, and the defendant was identified. When the police first saw the defendant halfway underneath the bed, he had in his reach some

folded bills. One of the officers seized that money as evidence of the proceeds of the crime. At the time the defendant and the money were seized, Rosado withdrew her consent and stated that she was not, in fact, the renter of the apartment and did not reside there. The police immediately ceased their search of the inside of the defendant's home. Prior to trial, the defendant filed a motion to suppress evidence of the money that the police recovered from his home.

The defendant claims that the consent the police obtained from Rosado was insufficient because the state failed to prove that she had common authority or apparent authority to consent to the search of an apartment the police should have known was rented by the defendant. The defendant argues that because the telephone number from which the police identified him was registered to his home address and under his name, the police were required to obtain his consent before searching the premises without a warrant. We disagree with the defendant that it was unreasonable for the officers to believe that Rosado had the authority to consent to the search of the apartment.

We reiterate our standard of review of a court's findings and conclusions in connection with a motion to suppress. "A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . On a motion to suppress, [i]t is the function of the trier to determine the credibility of witnesses and the weight to be given their testimony. . . .

"It is axiomatic that searches and seizures inside a home without a warrant are presumptively unreason-

able. *Payton* v. *New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); *State* v. *Guertin*, 190 Conn. 440, 446, 461 A.2d 963 (1983). . . . A warrantless search or entry into a house is not unreasonable, however . . . when a person with authority to do so has freely consented. *State* v. *Reagan*, 209 Conn. 1, 7, 546 A.2d 839 (1988). It is the state's burden to prove that the consent was freely and voluntarily given, and that the person who purported to consent had the authority to do so. *Bumper* v. *North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968) [on appeal after remand, 5 N.C. App. 528, 169 S.E.2d 65, aff'd, 275 N.C. 670, 170 S.E.2d 457 (1969)]; *State* v. *Reagan*, supra [7]. Such consent may not be established by mere acquiescence to police authority. . . . Whether there was valid consent to search is a factual question that will not be lightly overturned on appeal. . . .

"[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. *United States* v. *Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). Common authority is . . . not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. . . .

"In addition, a warrantless search is valid when it is based on the consent of a third party who the police, at the time of the search, reasonably believe possesses common authority over the premises but who in fact does not have such authority. *Illinois* v. *Rodriguez*, 497 U.S. 177, 188, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990). As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" (Citations omitted; internal quotation marks omitted.) *State* v. *Yusuf*, 70 Conn. App. 594, 603–605, 800 A.2d 590, cert. denied, 261 Conn. 921, 806 A.2d 1064 (2002).

Here, DePietro and the other officers arrived at the defendant's apartment and were greeted by the defendant's girlfriend, who told them that she lived in the home with her children and that no other adults were in the apartment at that time. While the officers had reason to believe that the defendant resided in the apartment, in addition to Rosado, they had no reason to believe that Rosado was lying to them about residing there with her two children, especially because her children were in the apartment with her during the night. Under those circumstances, it was reasonable for DePietro and the other officers to believe that Rosado lived in the apartment and had equal access to and common authority over all the rooms in the apartment, including the one in which the police subsequently found the defendant. The court, therefore, properly denied the defendant's motion to suppress.

IV

The defendant's final claim is that the court improperly failed to conduct an inquiry into a possible jury taint, thereby violating his constitutional right to an

impartial jury. The defendant did not preserve his claim at trial and seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. We will review the defendant's claim because the record is adequate for review and his claim is of constitutional magnitude. See *State* v. *Mukhtaar*, 253 Conn. 280, 295, 750 A.2d 1059 (2000). We conclude, however, that the defendant has failed to satisfy the third prong of *Golding*.

The following facts are relevant to our resolution of the defendant's claim. On January 23, 2003, prior to the panel of jurors being chosen, the defendant told the court that one of the marshals had commented to him something approximating, "If you hadn't done it, you wouldn't have been incarcerated." The defendant indicated to the court that the comment was made only to the defendant and, when the comment was made, the venirepersons were secreted away in the jury room. The defendant indicated that he did not know if anyone else had heard the comment, and his main concern was that it not happen again because he did not want the jurors to know that he was incarcerated. The court inquired of the defendant twice of the exact location of the venirepersons and then concluded that it was satisfied that the venirepersons could not have heard the comment. The court also commented that it did not want to taint the jury pool by inquiring into the problem with the venirepersons if no problem in fact existed.

Our review of the defendant's claim is guided by our Supreme Court's recent decision in *State* v. *Ross*, 269 Conn. 213, 247, 849 A.2d 648 (2004) (en banc), in which it held that the traditional juror misconduct inquiry set forth in *State* v. *Brown*, 235 Conn. 502, 668 A.2d 1288 (1995) (en banc), is inapplicable to situations in which the allegations are that a venire panel has been tainted prior to voir dire. In *Ross*, our Supreme Court stated: "When an allegation is made . . . that a venire panel has been tainted, voir dire itself provides a means to

uncover bias. Therefore, such an allegation does not necessarily require an independent inquiry by the court. Although we recognize that, as in the present case, there may be circumstances in which the trial court perceives a need for an inquiry exceeding the scope of voir dire, we conclude that, as in *Brown*, the form and scope of the court's inquiry, if any, into possible taint of a venire panel before voir dire depends on the circumstances of the case and is to be determined by the trial court within the exercise of its discretion." *State* v. *Ross*, supra, 248.

Here, the court conducted a preliminary inquiry of counsel and the defendant and was satisfied that there was no taint. Furthermore, the court was concerned that a more in-depth inquiry that extended to the venirepersons would create a taint in the venire pool. It is clear that the court considered the facts before it and determined that the most appropriate response was not to question the venirepersons directly on the issue. The court did not limit counsel, however, from asking questions of the venirepersons that touched on the issue either directly or indirectly. Accordingly, we conclude that the court did not abuse its discretion in inquiring only of counsel and the defendant about the possible taint and that the court's actions adequately protected the defendant's right to an impartial jury.

The judgment is affirmed.

In this opinion the other judges concurred.