### STATE OF CONNECTICUT *v.* LAMONT G. WHEALTON (AC 26900)

Bishop, McLachlan and Gruendel, Js.

---

Argued March 24—officially released June 3, 2008

*Christopher M. Neary*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Kelley P. Swift*, former assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Lamont G. Whealton, appeals from the judgment of conviction rendered by the trial court following his conditional plea of nolo contendere, under General Statutes § 54-94a,[1] to three counts of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), two counts of possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b), one count of possession of drug paraphernalia in a drug factory situation in violation of General Statutes § 21a-277 (c) and one count of possession of less than four ounces of marijuana in violation of General Statutes § 21a-279 (c). On appeal, the defendant

---

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

claims that the court improperly denied his motion to suppress evidence that was obtained by the police as the result of warrantless searches of his vehicle and an apartment in violation of his rights under the state and federal constitutions. We affirm the judgment of the trial court.

In response to the defendant's written motion to suppress filed May 25, 2004, the court conducted a hearing at which the state presented testimony from Silas Redd, a Stamford police officer. Redd testified as to the following facts. In late November, 2003, Redd received information from a confidential informant that the defendant, an African-American male referred to as "LA," was allegedly selling crack and powder cocaine and heroin, that he resided at 28 Perry Street in Stamford and that he drove a brown colored Cadillac with a dark colored top and Connecticut license plate 687-RWT.

On December 17, 2003, while Redd and other officers conducted surveillance at 28 Perry Street, they observed an African-American male exit the building and enter a vehicle matching the description provided by the informant. While following the defendant and observing that he disobeyed a traffic signal, Officers Felix Martinez and Heather Frank stopped him near a highway exit ramp and asked him for his driver's license. When the defendant was unable to produce his license, he was asked to step out of the vehicle and was informed that he would be given a summons for driving without a license and disobeying a traffic signal. Because the defendant did not have a license and, consequently, was unable legally to drive the vehicle, and the vehicle was stopped in a heavily traveled portion of the road, the officers called a tow truck to remove the vehicle. Pursuant to police department policy, Redd, Martinez and Frank conducted an inventory search of the vehicle prior to having it towed to an impound lot.

During the search, the officers found a dark colored plastic bag containing narcotics and a scale.

At that point, the defendant was placed under arrest and told of his rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Redd told the defendant that he believed that more drugs were likely at his apartment and asked the defendant for his consent to search it. The defendant did not object and told Redd that he lived at apartment 2H, 28 Perry Street, with Shirley Anthony and their six year old daughter. The officers, now joined by Sergeant James Matheny and Lieutenant John Fontano, proceeded to 28 Perry Street with the defendant in handcuffs. Once at apartment 2H, the officers attempted to open the apartment door with the key given to them by the defendant, but the key did not work. The officers then summoned the building superintendent, who told them that the defendant no longer lived in apartment 2H but that he lived upstairs in apartment 6B with Anthony.

The officers and the defendant proceeded to the sixth floor where the defendant indicated that he did not consent to a search of the sixth floor apartment. After the building superintendent informed the officers that Anthony was on her way home, the officers used the defendant's key to enter the apartment where they conducted a sweep for security reasons because they were unsure if Anthony had already arrived, and they did not want evidence tampered with or destroyed. The officers did not find any contraband as a result of this initial sweep.

Following the sweep, the officers waited for Anthony in the hallway outside the apartment, and the defendant was removed to the police station. Anthony testified that when she arrived, she was pressured into signing a consent to search form. Once they obtained Anthony's

consent, the officers searched the apartment, where they discovered narcotics.

At the suppression hearing, the state argued that the narcotics found in the vehicle were found pursuant to a valid inventory search and that the search of the apartment was conducted with Anthony's consent. Although the defendant's written motion to suppress was not specific, he contended at the hearing that the search of the defendant's vehicle did not permit the officers to inventory the contents of the dark colored bag and that Anthony's consent to search the apartment was not voluntary, rendering both searches unlawful.

In an oral ruling, the court denied the defendant's motion to suppress. As to the vehicle search, the court found that on the basis of the situation at hand, in which the defendant had been operating a vehicle without a license in an area from which the car had to be moved for traffic and safety reasons, it was reasonable for the police to have the vehicle impounded, and the attendant inventory search was lawful. Regarding the apartment, the court discredited Anthony's testimony, finding that her consent to search was voluntary. Accordingly, the court denied the defendant's motion to suppress.[2] The defendant thereafter entered a conditional plea of nolo contendere, and this appeal followed.

"[O]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine

---

[2] The court also concluded that the protective sweep of the apartment was not justified, but because the contraband was not discovered at that time, suppression was not warranted. The defendant has not challenged that conclusion on appeal.

whether they are legally and logically correct and whether they find support in the facts set out in the court's [ruling] . . . . Because a trial court's determination of the validity of a . . . search [or seizure] implicates a defendant's constitutional rights . . . we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . However, [w]e [will] give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Citation omitted; internal quotation marks omitted.) *State* v. *Kimble*, 106 Conn. App. 572, 579, 942 A.2d 527, cert. denied, 287 Conn. 912, 950 A.2d 1289 (2008).

At the outset, we note that the defendant's arguments raised on appeal in support of suppression differ from those he raised before the trial court. In the trial court, the defendant claimed that the vehicle inventory did not permit an officer to look inside the contents of an opaque plastic bag and that the apartment search was unlawful because Anthony's consent had been coerced. On appeal, however, the defendant now claims that the search of the vehicle was not a valid search because the police had no cause to inventory the vehicle prior to its being turned over to a private towing company and that Anthony's consent to search the apartment was invalid in light of the defendant's earlier objection. Because the defendant raises both of these claims for the first time on appeal, he seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless

error analysis, the state has failed to demonstrate harm-lessness of the alleged constitutional violation beyond a reasonable doubt." Id. We address each claim in turn.

I

The defendant first claims that the search of his vehicle was impermissible. The defendant argues that the officers had no authority to inventory the vehicle because it was not going to be retained by the police but, rather, was placed in the possession of the private towing company. The defendant also contends that the inventory search was unlawful because Redd testified that he had seen the bag on the floor of the car during the initial stop, and, when asked at the suppression hearing, Redd could not recall any of the other items that were found in the car. Because the defendant has failed to establish a clear constitutional violation, his claim regarding the vehicle search fails under the third prong of *Golding*.[3]

An inventory search is "a well-defined exception to the warrant requirement. . . . In the performance of their community caretaking functions, the police are frequently obliged to take automobiles into their custody. . . . A standardized procedure for making a list or inventory as soon as reasonable after reaching the stationhouse not only deters false claims but also inhibits theft or careless handling of articles taken from the arrested person." (Internal quotation marks omitted.) *State* v. *Vallejo*, 102 Conn. App. 628, 640, 926 A.2d 681, cert. denied, 284 Conn. 912, 931 A.2d 934 (2007).

Here, the court credited Redd's testimony that the officers conducted the inventory search pursuant to standard procedure when the vehicle was going to be

[3] The defendant also claims that the state failed to introduce evidence regarding police procedure for inventory searches. Because this claim is evidentiary in nature, not constitutional, it does not qualify for *Golding* review.

impounded. The defendant has not provided this court with any legal basis for distinguishing between a situation in which the police take a vehicle into police custody or turn it over to a private towing company for impounding. In both cases, the protective reasons for an inventory search pertain. On the basis of our review of the record, which reflects that the defendant did not have a driver's license and consequently was unable legally to drive the vehicle, and that the vehicle was in a high traffic area and needed to be towed, we find no fault with the court's determination that the inventory search was appropriate.

II

The defendant also claims that the search of the apartment was unlawful because he objected to it. The defendant contends that because he had a possessory interest in the apartment, his objection was sufficient to override Anthony's later consent. As noted, because the defendant did not make this argument before the trial court, we review it under *Golding*, and we conclude that it fails to satisfy *Golding*'s first prong.

"It is axiomatic that searches and seizures inside a home without a warrant are presumptively unreasonable. . . . A warrantless search or entry into a house is not unreasonable, however . . . when a person with authority to do so has freely consented. . . . It is the state's burden to prove that the consent was freely and voluntarily given, and that the person who purported to consent had the authority to do so. . . . Such consent may not be established by mere acquiescence to police authority. . . . Whether there was valid consent to search is a factual question that will not be lightly overturned on appeal. . . .

"[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not

limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. *United States* v. *Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). Common authority is . . . not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. . . .

"In addition, a warrantless search is valid when it is based on the consent of a third party who the police, at the time of the search, reasonably believe possesses common authority over the premises but who in fact does not have such authority. *Illinois* v. *Rodriguez*, 497 U.S. 177, 188, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990). As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" (Citations omitted; internal quotation marks omitted.) *State* v. *Vazquez*, 87 Conn. App. 792, 802–804, 867 A.2d 15, cert. denied, 273 Conn. 934, 875 A.2d 544 (2005).

"[W]hether the individual providing consent possessed the requisite authority . . . is a question of fact to be determined from the totality of all the circumstances. . . . As a question of fact, it is normally to be decided by the trial court upon the evidence before that

court together with the reasonable inferences to be drawn from that evidence. . . . We may reverse [the trial court's factual] findings on appeal only if they are clearly erroneous." (Internal quotation marks omitted.) *State* v. *Azukas*, 278 Conn. 267, 275, 897 A.2d 554 (2006).

Here, the defendant contends that his refusal to consent to the search nullified Anthony's later consent. In support of his claim, the defendant relies on *Georgia* v. *Randolph*, 547 U.S. 103, 126 S. Ct. 1515, 164 L. Ed. 2d 208 (2006).[4] In *Randolph*, the United States Supreme Court held that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." Id., 120. The court distinguished *Randolph* from its previous rulings in *Illinois* v. *Rodriguez*, supra, 497 U.S. 177, and *United States* v. *Matlock*, supra, 415 U.S. 164. In *Rodriguez* and *Matlock*, the police obtained voluntary consent from a co-occupant at the residence and found evidence implicating another resident who was not present at the time the police obtained consent. In *Rodriguez*, the co-occupant, who later objected to the search, was asleep in a bedroom within the residence. *Illinois* v. *Rodriguez*, supra, 180. In *Matlock*, the later objecting co-occupant was located in a nearby police vehicle. *United States* v. *Matlock*, supra, 179 (Douglas, J., dissenting). In *Randolph*, however, the husband and wife co-occupants were both present when the police sought to search

---

[4] Although the defendant relies on *Randolph*, he provides no analysis whatsoever in this regard other than stating that it controls. The defendant also relies on *State* v. *Brunetti*, 276 Conn. 40, 883 A.2d 1167 (2005). The defendant acknowledges that that case was superseded by *State* v. *Brunetti*, 279 Conn. 39, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007), but nevertheless invites us to apply the principles set forth in the first case even though they were not espoused in the latter, controlling opinion. We know of no authority, nor does the defendant provide any, for this novel suggestion.

their home. The wife consented and the husband refused to consent. The court held that his objection invalidated the wife's consent. *Georgia* v. *Randolph,* supra, 107. The *Randolph* court acknowledged that it was "drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out." Id., 121.

*Randolph,* like *Rodriguez* and *Matlock,* applied to situations involving co-occupants. In this case, however, the court did not find, and it is not clear from the record, that the defendant was a co-occupant of the apartment with joint access or control for most purposes and, therefore, had common authority to consent or to object to the search. Common authority is not an "enforceable ownership right as understood by the private law of property, but is instead the authority recognized by customary social usage as having a substantial bearing on Fourth Amendment reasonableness in specific circumstances. Thus, to ask whether the consenting tenant has the right to admit the police when a physically present fellow tenant objects is not to question whether some property right may be divested by the mere objection of another. It is, rather, the question whether customary social understanding accords the consenting tenant authority powerful enough to prevail over the co-tenant's objection." Id., 120–21.

At the suppression hearing, Anthony testified that she is the lessee of the apartment and that the defendant was not on the lease. Although she indicated that the defendant stayed there "off and on," there is no evidence in the record regarding how often and for what periods of time the defendant stayed at the apartment. Anthony stated that the defendant had a key to the apartment because they have a child together and that

he came to the apartment to see the child. She indicated that her mother also had a key to her apartment. There is no evidence in the record indicating that the defendant contributed to the rent, kept possessions there or used that apartment as his address. There also was no evidence presented as to the expectations of Anthony and the defendant regarding whether the defendant had free and unlimited access to the apartment, whether he was permitted to have guests at the apartment and whether he exercised mutual use and had joint access or control of the apartment for most purposes. Because the court was not provided any information in this regard, and the issue of the defendant's authority to override Anthony's consent was not raised at the suppression hearing, the court made no finding regarding the defendant's authority over the apartment. In the absence of that factual finding, this court has no basis for determining whether the defendant had common authority over the apartment, and the record is, therefore, inadequate for our review of his belated claim on appeal that his objection invalidated Anthony's consent.

The judgment is affirmed.

In this opinion the other judges concurred.