******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* GILBERT ORLANDO
(AC 36402)

Alvord, Keller and Flynn, Js.

*Argued November 19, 2015—officially released February 16, 2016*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, White, J. [motion to remove counsel]; White, Genuario and Povodator, Js. [judgment].)

*Alan Jay Black*, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Richard J. Colangelo*, *Jr.*, state's attorney, and *James M. Bernardi*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The principal issue to be decided in this case involves whether a criminal defendant has an absolute right under either the United States constitution or our state constitution to demand the replacement of his court appointed counsel if such a request is made almost five months prior to the date that his actual trial begins.

The defendant, Gilbert Orlando, appeals from the judgment of conviction by a three judge panel of two counts of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a. His sole ground for appeal arises out of the court's denial of his request for a new attorney to represent him in his trial, which he alleges violates his right to counsel guaranteed by the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. We conclude that the court did not abuse its discretion in denying his motion to substitute counsel and affirm the judgment.

The following procedural history and facts, which the panel reasonably could have found, are pertinent to our review. On June 14, 2010, the defendant went to the home of his former wife, Enid Dickens, where a dispute began between them. This dispute arose out of the fact that locks had been changed at the home the defendant had formerly occupied and his claim that Dickens had enabled her brother to steal his identity, who then used the defendant's identity to pay for his medical bills. After this argument at the home became heated, and Dickens attempted to hit the defendant with a lamp, he pulled out a gun and shot both his wife and his mother-in-law, Rona Knight, causing their deaths.

Shortly thereafter, the defendant telephoned both Kerry Haynes and John Pounds admitting that he had killed both women. A neighbor had heard the shots fired by the defendant at Dickens' home, alerted the Norwalk police, and police response to the scene of the killing was rapid. Sergeant Frank Reda of the Norwalk Police Department, with the aid of a police dog, apprehended the defendant in a wooded area near Interstate 95. Detective David Orr of the Norwalk Police Department interviewed the defendant and asked him where the gun he had used was then located. The weapon, a .357 Magnum, was seized after the defendant pointed to it. Detective James O'Leary and Sergeant Drew Sedlock, both of the Norwalk Police Department, interviewed the defendant. O'Leary read the defendant his rights under *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), because the defendant could not read. The defendant gave the police a statement admitting that as the dispute escalated, he pulled out his gun and shot both his former wife and her

mother. The defendant was arrested by the Norwalk Police Department and ultimately arraigned in Norwalk Superior Court. On June 15, 2010, the court, *Comerford, J.*, appointed public defender Barry Butler to represent the defendant. On two occasions the defendant asked the court to remove Butler and appoint another attorney to represent him. The first request occurred before October 5, 2012. The second request, which occurred at trial, is not asserted as grounds for this appeal.

The defendant was charged in a substitute information with two counts of murder in violation of General Statutes § 53a-54a for the shooting deaths of Dickens and Knight, respectively, and a third count of capital felony in violation of General Statutes (Rev. to 2009) § 53a-54b (7). The capital felony charge was lodged because there were two murders charged to the defendant. The defendant interposed a defense of extreme emotional disturbance, as provided in § 53a-54a (a). After trial, the three judge panel found that this defense was proved by the defendant by a preponderance of the evidence. The panel, therefore, found the defendant not guilty of both murder counts, but did find the defendant guilty of manslaughter in the first degree with a firearm pursuant to § 53a-55a. The panel found the defendant not guilty of capital felony because the state had failed to prove that two murders were committed in the same transaction.

It is not disputed that at some point prior to October 5, 2012, the defendant made a pro se motion seeking to replace Butler with a new court appointed attorney. At that point in time, Butler had been representing the defendant since his June 15, 2010 date of arraignment. Butler had retained an expert for a mental health evaluation of the defendant. The case was placed on the trial list on September 13, 2011, but further mental evaluations of the defendant were permitted. The state advised the court on October 5, 2012, that at some point the defendant had filed a handwritten pro se motion seeking replacement of his court appointed counsel.

Judge White gave the defendant a hearing on his motion to replace counsel and the defendant placed his complaints about Butler on the record. They can be summarized in five categories, that his counsel (1) was not doing anything for him, (2) did not provide him with paperwork concerning his case, (3) did not take up and investigate his claim of identity theft, (4) did not investigate his claim that Dickens and her family were subjecting him to voodoo, and (5) did not secure his clothing and other personal property while he was jailed awaiting trial. In an articulation, Judge White found that after careful consideration of the defendant's claims that they were "not credible and lacked a substantial factual basis."

In response to the defendant's assertions, at the hearing, Butler indicated that (1) he was prepared to try

the defendant's case, (2) he had not given the defendant written materials, but pointed out that the defendant was illiterate, and noted that he had read to him paperwork generated by the case, (3) he had the information needed to present facts concerning the theft of the defendant's identity in connection with his defense of extreme emotional disturbance, (4) the Dickens family had destroyed physical evidence relating to voodoo that prevented further investigation, (5) the defendant's personal property had been thrown away by the victim's family and therefore, Butler could not assist him in its retrieval. In his articulation, Judge White, found that he did credit Butler's representations. The court further found that Butler had "reviewed the State's factual allegations [against the defendant] with the defendant; informed the defendant of all discovery related information; was . . . preparing a defense of extreme emotional disturbance based on the defendant's identity theft and voodoo claims; explained the applicable law to him; [had] filed or would file all appropriate motions; made a good faith effort to recover the defendant's personal belongings from the crime scene; and was fully prepared to vigorously represent the defendant at trial."

Practice Book § 3-9 (e) provides, in pertinent part, that subject to certain exceptions that do not apply to these circumstances, "no attorney shall withdraw his or her appearance after it has been entered upon the record of the court without the leave of the court." Practice Book § 3-10 (a) provides, in relevant part, that "[n]o motion for withdrawal of appearance shall be granted unless good cause is shown . . . ." "A request for substitution of counsel requires support by a substantial reason . . . ." *State* v. *Drakeford*, 202 Conn. 75, 83, 519 A.2d 1194 (1987). In his articulation, Judge White found that "[t]here simply was no credible factual basis or substantial reason that convinced this court to exercise its discretion to allow the defendant to change lawyers."

I

We first turn to the defendant's claim under the United States constitution that the court abused its discretion in denying his motion to replace his court-appointed counsel. We disagree with the defendant's claim.

On appellate review, such claims are reviewed under an abuse of discretion standard. *State* v. *Gonzalez*, 205 Conn. 673, 683, 535 A.2d 345 (1987). A defendant has a sixth amendment right to counsel. *Wheat* v. *United States*, 486 U.S. 153, 158, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988). However, an impecunious defendant does not have a right to choose his own counsel. *Caplin & Drysdale, Chartered* v. *United States*, 491 U.S. 617, 624, 109 S. Ct. 2646, 105 L. Ed. 2d 528 (1989). The sixth amendment "guarantees defendants in criminal cases the right to adequate representation, but those who do

not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." Id.

"The Sixth Amendment to the Constitution guarantees that [i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence. In *United States* v. *Morrison*, [449 U.S. 361, 364, 101 S. Ct. 665, 66 L. Ed. 2d 564] (1981), [the Supreme Court] observed that this right was designed to assure fairness in the adversary criminal process. Realizing that an unaided layman may have little skill in arguing the law or in coping with an intricate procedural system, *Powell* v. *Alabama*, [287 U.S. 45, 69, 53 S. Ct. 55, 77 L. Ed. 158] (1932); *United States* v. *Ash*, [413 U.S. 300, 307, 93 S. Ct. 2568, 37 L. Ed. 2d 619] (1973), [the Supreme Court has] held that the Sixth Amendment secures the right to the assistance of counsel, by appointment if necessary, in a trial for any serious crime. . . . [The Supreme Court has] further recognized that the purpose of providing assistance of counsel is simply to ensure that criminal defendants receive a fair trial, *Strickland* v. *Washington*, [466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674] (1984), and that in evaluating Sixth Amendment claims, the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such. . . . Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." (Citations omitted; internal quotation marks omitted.) *Wheat* v. *United States*, supra, 486 U.S. 158–59.

When a defendant seeks to have court appointed counsel removed and new counsel appointed, a trial court must grant a defendant a hearing and the extent of the inquiry is in the trial court's discretion. *State* v. *Williams*, 102 Conn. App. 168, 204–205, 926 A.2d 7, cert. denied, 284 Conn. 906, 931 A.2d 267 (2007). The court did not abuse its discretion in the extent of inquiry it engaged in during the hearing it provided to the defendant. It permitted the defendant to put all of his complaints on record and allowed his attorney to respond. The court did not abuse its discretion in denying the defendant's request for new counsel. Butler, at the time of the defendant's request, had been representing the defendant for more than two years. He had extensive involvement with the expert retained to assist in establishing the defense of extreme emotional disturbance. This was a key defense because several witnesses had heard the gunshots, the defendant had confessed to being the killer to two others in separate telephone conversations, he had admitted both killings to the police, and the weapon used had been recovered by the police. In short, there was a mountain of inculpatory

evidence to be climbed, but Butler nonetheless succeeded in proving the defense of extreme emotional disturbance and obtaining not guilty findings as to the murder and capital felony charges. Butler did not provide copies of papers to the defendant in connection with the case, but he explained that was because the defendant could not read. He did read them to the defendant. Butler reported that he had looked into the defendant's claim that his identity had been stolen to enable a brother-in-law to get medical treatment by using the defendant's name. In fact, this evidence was later presented in connection with the defense of extreme emotional disturbance. Furthermore, Butler told the court that he was unable to gather evidence of the defendant's claim that the defendant's in-laws were using voodoo against the defendant or to assist his client in the return of clothing or personal property because Dickens' family had disposed of all of these items. Finally, the court heard Butler say that he was ready and able to try the case. Based on this record, the court did not abuse its discretion in denying the defendant's motion to appoint new counsel.

The defendant, in his brief, makes much of the fact that his request for new counsel was made five months before the actual trial began. We are not persuaded. What this argument ignores is that a request must not simply be timely so as not to be disruptive or dilatory, but the reasons underlying it must be both asserted in good faith and "substantial." *State* v. *Drakeford*, supra, 202 Conn. 82. Here, the court did not credit any of the defendant's five claims, but it did credit Butler's representations as to his work on the case and consultations with his client. More importantly, the court found that none of the defendant's complaints was substantial.

The United States Supreme Court pointed out in *Wheat*, citing *Morris* v. *Slappy*, 461 U.S. 1, 13–14, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983), that "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat* v. *United States*, supra, 486 U.S. 159. The court's decision not to substitute counsel for Butler was later confirmed when the defendant was found not guilty by the three judge panel of two murders and a charge of capital felony, largely due to his attorney's skill in proving the defense of extreme emotional disturbance and raising reasonable doubt about whether the defendant committed two murders that were part of the same transaction.

II

"It is well established that federal constitutional and statutory law establishes a minimum national standard for the exercise of individual rights and does not inhibit state governments from affording higher levels of protection for such rights." (Internal quotation marks omit-

ted.) *State* v. *Geisler*, 222 Conn. 672, 684, 610 A.2d 1225 (1992). It is against that backdrop that we next turn to the defendant's contentions that (1) article first, § 8, of the Connecticut constitution should provide more protections than does the United States constitution's sixth amendment, and (2) the abuse of discretion standard applied to sixth amendment claims should not be the measure of appellate review of article first, § 8, claims made under our Connecticut constitution.

Article first, § 8, provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ." Conn. Const., art. I, § 8. Our federal constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the [a]ssistance of [c]ounsel for his defence." U.S. Const., amend. VI. There is no appreciable difference in the text of either the federal or state constitutions except that under our federal constitution the right to act for oneself is implicit whereas in our state constitution that right is express. Neither text expressly confers the right in a defendant to require the court to substitute one court appointed counsel for another. As a corollary to the defendant's assertion of a greater right to such substitution under our state constitution, he contends that where his request to substitute counsel was made five months before his trial began, and because he is illiterate and speaks English with a Jamaican accent which prevented him from making his case for substitution clearly, that it should not be left to the trial court's discretion to grant or deny his motion to replace court appointed counsel.

Claims under the state constitution are reviewed under a matrix that our Supreme Court set out in the case of *State* v. *Geisler*, supra, 222 Conn. 672. It held that "[i]n order to construe the contours of our state constitution and reach reasoned and principled results, the following tools of analysis should be considered to the extent applicable: (1) the textual approach . . . (2) holdings and dicta of [our Supreme Court], and the Appellate Court . . . (3) federal precedent . . . (4) sister state decisions . . . (5) the historical approach, including the historical constitutional setting and the debates of the framers . . . and (6) economic/sociological considerations." (Citations omitted; emphasis omitted.) Id., 684–85. *Geisler*, however, points out that these factors are only to be considered "to the extent applicable." Id., 685. The state urges us to decline review of the defendant's greater protection claim because he "has failed to fully and properly analyze it" in his brief, handicapping the state's response. However, the defendant is seeking to plow new ground where there are limited case precedents that have previously turned over that earth, and it is not clear how any historical or economic/sociological precedents would be helpful in interpreting our state's constitutional right to coun-

sel, so that not all of the *Geisler* factors are pertinent. Id. We therefore review the claim.

Essentially, the defendant makes six claims which we will address in series. He first argues that the trial court wrongly applied an abuse of discretion standard in its decision to deny him new counsel. We disagree. Whether to substitute one court appointed counsel for another necessarily involves discretion and judgment on the part of the trial judge. See *State* v. *Williams*, supra, 102 Conn. App. 205. On appeal, our role is to determine whether there has been any abuse of that discretion in denying that request. See *State* v. *Turner*, 133 Conn. App. 812, 819, 37 A.3d 183, cert. denied, 304 Conn. 929, 42 A.3d 390 (2012).

The defendant next argues the fact that his request to substitute was made five months before the actual trial began should militate to require the appointment of new counsel because the trial did not begin until months later. We are not persuaded. This argument ignores the undisputed fact that the case had been placed on the ready trial list. As such, it was subject to being called in to court to commence at any time when those cases before it had concluded or had been continued for some good reason. That process can accelerate if older cases are dismissed, nolled, resolved by plea, tried more quickly than anticipated, or continued to a later date because of unavailability of counsel or witnesses. Therefore, at the time that the court made its decision not to appoint new counsel it could not be known that the case would not commence earlier than the five months that actually did elapse, and courts have some obligation to ensure that criminal charges are disposed of in a timely manner. The defendant's point seems to be that because the trial did not commence immediately after his motion, there would not be any attendant undue delay in the commencement of trial had it been granted. The simple answer to this is that at the time the court was deciding the issue, because the defendant's case could be and might be called in at any time, delay was possible if a new counsel were appointed and required to duplicate the preparation Butler had already made, and the court in its exercise of discretion could weigh that.

The defendant also claims that there was a breakdown in communication between the defendant and Butler. The simple answer to this contention is that the court did not find such a breakdown and, in fact, noted on the record during the taking of evidence that such communication did exist.

The defendant also alleges that there was a breakdown in communication because of a language barrier. The record before us belies this contention. The record reveals that the defendant is of Jamaican background. During the hearing, the defendant advised the court that he earlier had requested that Butler move to dismiss

himself. At that juncture the court understandably misinterpreted this phrase as the defendant's suggestion that he wanted his counsel to move to dismiss the case when in reality what the defendant really wanted, despite his use of ambiguous terminology, was for Butler to move to withdraw as his counsel. This was soon cleared up and, in fact, the court held a hearing on whether new court appointed counsel should be substituted. During the trial, the court noted that the defendant and his counsel were conferring as witnesses were examined and Butler never indicated that he had any difficulty understanding the defendant. At one point, the prosecuting attorney indicated that he could not understand the defendant who speaks English with the accent of his native country, Jamaica. The court ordered an interpreter for the prosecutor, however, the court noted that it had no difficulty understanding the defendant. We reject this claim.

Finally, the defendant claims that Judge White did not fully understand the depth of mistrust the defendant showed to his attorney. Although Judge White did not grant the defendant's request to substitute new court appointed counsel, it is clear that he gave no credit to the defendant's claims and concluded that the defendant had not shown the good cause and substantial reason our rules of practice require before one court appointed counsel must be substituted for another.

In reviewing the *Geisler* standards, the textual analysis does not support the defendant's claims. *State* v. *Geisler*, supra, 222 Conn. 685. There is no appreciable difference in the expression of the right to counsel in either constitution as it related to the right to counsel. Neither the federal, nor the state constitution's text expressly deal with an absolute right to demand substitution of one court appointed counsel for another.

We next look to holdings and dicta of our Supreme Court and of the Appellate Court.[1] We find no case from our Supreme or Appellate Court in which the issue was distinctly raised. *State* v. *Jordan*, 305 Conn. 1, 12–23, 44 A.3d 794 (2012), dealt with a defendant's desire to exercise his right to act on his own behalf and waive counsel, but nonetheless has instructive dicta. In analyzing a federal sixth amendment claim, which language is similar to our state's constitution, Justice Palmer in a concurring opinion in *Jordan* opined that "[a]s a general matter, a criminal defendant has a right to represent himself for any reason, and he may do so even if the attorney representing him at the time has performed diligently and effectively. See, e.g., *State* v. *Flanagan*, 293 Conn. 406, 431, 978 A.2d 64 (2009) ([t]he right of a defendant in a criminal case to act as his own lawyer is *unqualified* if invoked prior to the start of the trial . . .). By contrast, an indigent defendant for whom counsel has been appointed is not entitled to the appointment of new counsel unless he can demonstrate

good cause why the attorney originally appointed to represent him should be dismissed." (Emphasis in original; internal quotation marks omitted.) *State* v. *Jordan*, supra, 35 (*Palmer, J.*, concurring). This dicta is persuasive and consistent with Practice Book § 3-10. We have already reviewed federal precedent in connection with the defendant's sixth amendment claim, and Chief Justice Rehnquist's opinion in *Wheat* makes it clear that our federal constitution does not grant a right to be represented by a court appointed counsel whom he prefers. *Wheat* v. *United States*, supra, 486 U.S. 158–59.

Neither the defendant nor the state point us to any decisions from sister states having similar provisions to article first, § 8, of our state constitution that might inform our analysis. The defendant points to a long history in our state of appointing counsel for the indigent. That record, however, does not warrant requiring a court to appoint new counsel for an indigent defendant who is already represented by effective counsel.

It is not clear how historical, economic, or sociological concerns could assist this court in reviewing this claim. Nor does the defendant provide us with any historical, economic, or sociological analysis supporting his claim that under our state constitution he had an absolute right to demand the replacement of his court appointed counsel.

Accordingly, we conclude that the court did not abuse its discretion in denying the defendant's motion to substitute new court appointed counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Citing to holdings and dicta of this court and our Supreme Court is expressly permitted by the second prong of *State* v. *Geisler*, supra, 222 Conn. 684–86. *State* v. *Buie*, 129 Conn. App. 777, 789, 21 A.3d 550 (2011), aff'd, 312 Conn. 574, 94 A.3d 608 (2014), raised the question of whether a warrantless search based on the consent of a third party under the apparent authority doctrine, although permissible under the fourth amendment to the United States constitution, was nonetheless barred under article first, § 7, of the Connecticut constitution. This court looked to related Connecticut precedent that cited federal constitutional law to interpret our state constitutional requirements. Id. This court specifically cited to *State* v. *Vasquez*, 87 Conn. App. 792, 867 A.2d 15, cert. denied, 273 Conn. 934, 875 A.2d 544 (2005), a fourth amendment case deciding the warrant requirement under the United States constitution. *State* v. *Buie*, supra, 798–99. *Buie* was affirmed by our Supreme Court, which referred to this court's opinion as "well reasoned." *State* v. *Buie*, 312 Conn. 574, 583, 94 A.3d 608 (2014).