# STATE OF CONNECTICUT *v.* BUDDY C. BEAVERS, JR.
## (AC 27373)

DiPentima, Harper and Lavine, Js.

Argued October 16, 2006—officially released January 16, 2007

*Charles F. Willson*, special public defender, for the appellant (defendant).

*Julia K. Conlin*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Brian Preleski*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Buddy C. Beavers, Jr., appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1), stealing a firearm in violation of General Statutes § 53a-212, possession of a sawed-off shotgun in violation of General Statutes § 53a-211, larceny in the third degree in violation of General Statutes § 53a-124, failure to appear in the first degree in violation of General Statutes § 53a-172 and being a persistent

dangerous felony offender in violation of General Statutes § 53a-40. The defendant received an effective sentence of thirty-five years. On appeal, the defendant claims that (1) the judgment should be reversed as to those counts alleging that he used a shotgun because there was no evidence that the firearm that he used could be, or was intended to be, fired from the shoulder and (2) the court abused its discretion by refusing to question or dismiss a juror whom the defendant claimed he recognized. The defendant's claims lack merit, and we therefore affirm the judgment of the trial court.

The jury reasonably could have found the following relevant facts. In 1998, Leroy Atkins was living in the home of his fiancee, Wilma Jean Beavers, in Bristol. From time to time, the defendant also lived with Wilma Jean Beavers, who was his mother. Atkins owned three handguns and one shotgun, a Mossberg 500 twenty gauge home defender, which he kept in a sheath in his bedroom closet. The shotgun had an eighteen and one-half inch barrel and a pistol grip. Atkins testified that state's exhibit one looked like his shotgun, except the barrel of exhibit one had been sawed off. At the time the shotgun was in his possession, the barrel had not been sawed off.

In November, 1998, Atkins noticed that his shotgun was missing and asked the defendant, who was living in Wilma Jean Beavers' home at the time, if he had taken it. The defendant responded, "no." Atkins indicated that he was going to report the shotgun missing because all of his weapons were registered. The defendant told him not to report the missing shotgun because Atkins may have misplaced it. The defendant said that he would help Atkins find the shotgun. On December 28, 1998, Atkins, however, reported the missing shotgun to Christopher Lennon, a detective with the Bristol police department. At trial, Lennon identified the serial number on exhibit one and testified that it matched the

serial number of the shotgun that Atkins had reported missing.

On February 11, 1999, Michael J. Nihan, a programmer at Rostra Vernatherm, Inc., in Bristol, was working the 4 p.m. until 2 a.m. shift. At about 3 a.m. when Nihan left the plant via the loading dock and walked toward his 1988 Ford Ranger, he was approached by a man wearing a black mask and a one piece hunting suit. Nihan pushed the man away and told him that he had "the wrong guy." The man then took out a gun and said, "you keep on, boy, I'm gonna do you here." According to Nihan, the man had a twenty gauge pump action shotgun. Nihan is a hunter and has been around guns most of his life. At trial, he identified exhibit one as the shotgun that the masked man had on February 11, 1999. After Nihan emptied his pockets, the man wrapped Nihan's hands and torso in industrial plastic wrap, entered Nihan's truck and left.

On April 12, 1999, Lennon spoke to the defendant at the Bristol police department. During the conversation, the defendant informed Lennon that he wanted to talk about the stolen truck. He also told Lennon that he had stolen the shotgun and wanted to show Lennon where it was. The defendant directed Lennon and another detective, Rodney Gotowala, to a box truck parked behind a hotel in Bristol. Inside the truck, the detectives found a shotgun, among other things. At the defendant's trial, the shotgun that the detectives found was entered into evidence as state's exhibit one. After finding the shotgun, Lennon took a statement from the defendant in which he confessed that he had robbed Nihan with the shotgun that he had taken from Atkins. The defendant was arrested and charged with the crimes of which he was convicted. Additional facts will be set forth as necessary.

## I

The defendant first claims that there was insufficient evidence pursuant to which the jury could have found that he used a shotgun, as defined by General Statutes § 53a-3 (17), to commit the crimes alleged in the second, third and fourth counts of the long form information.[1] He bases his claim on the fact that exhibit one has a pistol grip, rather than a stock, and therefore, was not intended to be fired from the shoulder. Section 53a-3 (17) defines a shotgun, in part, as a weapon intended to be fired from the shoulder. For this reason, he argues that the conviction for criminal possession of a firearm, stealing a firearm and possession of a sawed-off shotgun must be reversed. We are not persuaded.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Jimenez*, 74 Conn. App. 195, 201, 810 A.2d 848 (2002), cert. denied, 262 Conn. 947, 815 A.2d 677 (2003).

The following additional facts are relevant to the defendant's claim. The state filed a substitute long form information on September 8, 2004. It alleged, in relevant part:

---

[1] The defendant failed to preserve this claim at trial. In his oral motion for a judgment of acquittal, the defendant argued that there was insufficient evidence that he was the person who stole the shotgun from Atkins, that he was the person who sawed off the barrel of the shotgun or that exhibit one was a sawed-off shotgun because the barrel had not been measured in front of the jury. Nonetheless, we will review the defendant's claim of insufficient evidence as it implicates the defendant's constitutional right not to be convicted on insufficient evidence. See *State* v. *Reid*, 85 Conn. App. 802, 804, 858 A.2d 892, cert. denied, 272 Conn. 908, 863 A.2d 702 (2004).

"Count [t]wo . . . accuses [the defendant] of [c]riminal [p]ossession of a [f]irearm and charges that at the [c]ity of Bristol on or about February 11, 1999, the aforesaid [defendant] did possess a firearm (to wit: a shotgun) and was previously convicted of a felony . . . in violation of Section 53a-217 (a) (1) . . . .

"Count [t]hree . . . accuses [the defendant] of [t]heft of a [f]irearm and charges that at the [c]ity of Bristol on or about December 28, 1998 the aforesaid [defendant] did wrongfully take, obtain or withhold a firearm (to wit: a shotgun), with the intent to appropriate the same to himself in violation of Section 53a-212 (a) . . . .

"Count [f]our . . . accuses [the defendant] of [p]ossession of a [s]awed-off [s]hotgun and charges that at the [c]ity of Bristol on or about February 11, 1999 the aforesaid [defendant] did possess a shotgun having a barrel of less than eighteen inches in violation of Section 53a-211 (a) . . . ."

The defendant's claim requires us to construe the statutes defining the crimes of which he was convicted and § 53a-3 (17). "Statutory construction is a question of law and therefore our review is plenary." (Internal quotation marks omitted.) *State* v. *Ramos*, 271 Conn. 785, 791, 860 A.2d 249 (2004).

"The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z. "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and

such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." General Statutes § 1-1 (a).

The defendant was convicted under the following statutes, among others. General Statutes § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a *firearm* . . . when such person possesses a *firearm* . . . and (1) has been convicted of a felony . . . ." (Emphasis added.) General Statutes § 53a-212 (a) provides in relevant part: "A person is guilty of stealing a *firearm* when, with intent to deprive another of his *firearm* or to appropriate the same to himself . . . he wrongfully takes, obtains or withholds a *firearm,* as defined in subdivision (19) of section 53a-3." (Emphasis added.) General Statutes § 53a-211 (a) provides in relevant part: "A person is guilty of possession of a sawed-off shotgun . . . when he . . . possesses any sawed-off shotgun that has a barrel of less than eighteen inches . . . ."

The statutory definitions of a firearm and a shotgun inform our construction of the crimes charged. General Statutes § 53a-3 provides in relevant part: "Except where different meanings are expressly specified, the following terms have the following meanings when used in this title . . . (17) 'Shotgun' means a weapon designed or redesigned, made or remade, and *intended to be fired from the shoulder* and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger . . . . (19) '*Firearm*' means any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or *other weapon,* whether loaded or unloaded from which a shot may be discharged . . . ." (Emphasis added.) There is no definition of sawed-off shotgun in the definition section of our Penal Code, but

the crime of possessing a sawed-off shotgun is determined by the length of the barrel or firearm. See General Statutes § 53a-211 (a).[2]

The essence of the defendant's claim is that because he used a firearm with a pistol grip, it was not a shotgun. The operative word, however, in the statutes defining the crimes of criminal possession of a firearm and stealing a firearm is not shotgun but *firearm*. Section 53a-3 (19) defines a *firearm* as a shotgun, a sawed-off shotgun or other weapon. Because both a shotgun and a sawed-off shotgun are firearms pursuant to § 53a-3 (19), the legislature clearly intended to distinguish these three firearms.

The term *firearm* is the relevant element of the crimes of criminal possession of a firearm and stealing a firearm. The state was required to prove beyond a reasonable doubt that the defendant possessed and stole a *firearm*. It makes no difference that exhibit one had a pistol grip because it was a weapon capable of discharging a gunshot. Edward Jachimowicz, a criminologist and firearms expert, testified at trial. He described exhibit one as a twenty gauge Mossberg pump action shotgun, model 500C. He observed that the barrel of the gun had been cut crudely to a length of fifteen and one-half inches. Jachimowicz tested the operability of exhibit one, and it fired a gunshot. "[A] firearm is a weapon capable of discharging a shot." *State* v. *Brown,* 259 Conn. 799, 809, 792 A.2d 86 (2002). On the basis of the evidence before it, the jury reasonably could have found that exhibit one was a weapon, which is one of the statutory definitions of a firearm. See General Statutes § 53a-3 (17).

---

[2] General Statutes § 53a-211 (a) provides in relevant part: "A person is guilty of possession of a sawed-off shotgun . . . when he owns, controls or possesses any sawed-off shotgun that has a barrel of less than eighteen inches or an overall length of less than twenty-six inches . . . ."

With respect to the defendant's conviction of possession of a sawed-off shotgun, § 53a-3 (19) distinguishes between a shotgun and a sawed-off shotgun. The legislature defined them as two different kinds of firearms. The fact that exhibit one had a pistol grip is of no consequence because the barrel had been sawed off crudely, and it was, therefore, a sawed-off shotgun.

The defendant argues that he was denied due process of law because the long form information identified the firearm at issue as a shotgun. He supports his claim by noting that witnesses testified that exhibit one, the weapon stolen from Atkins and the weapon Nihan saw, was a shotgun.[3] Because exhibit one had a pistol grip, he argues, it could not be a shotgun. He claims, therefore, that there was insufficient evidence by which he could be found guilty of counts two, three and four. In making this argument, the defendant focuses on the word shotgun, which is a noun, and ignores the adjective modifying it, sawed-off, which distinguishes the two firearms.

With respect to counts two, criminal possession of a firearm, and three, stealing a firearm, the defendant argues that the state was required to give him specific notice of the firearm at issue. This argument is unpersuasive because there was no question at trial as to the weapon at issue, and the defendant was not prejudiced by the allegations in the information. In his motion for a judgment of acquittal, the defendant merely argued that there was insufficient evidence that he was the person who stole Atkins' shotgun, that he was the person who confronted Nihan and that the barrel of exhibit one was not measured before the jury. See footnote 1. The defendant never argued at trial that exhibit one was not a shotgun.

---

[3] The defendant also testified that Atkins' firearm was a shotgun.

With respect to the defendant's constitutional due process claim,[4] in accord with decisions of both this court and our Supreme Court, the state was not required to prove that the firearm at issue was a shotgun. "The sixth amendment to the United States constitution . . . guarantee[s] a criminal defendant the right to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial. . . . [That] the offense should be described with sufficient definiteness and particularity to apprise the accused of the nature of the charge so he can prepare to meet it at his trial . . . are principles of constitutional law [that] are inveterate and sacrosanct." (Citation omitted; internal quotation marks omitted.) *State* v. *Vumback*, 263 Conn. 215, 221–22, 819 A.2d 250 (2003).

"[G]enerally speaking, the state is limited to proving that the defendant has committed the offense in substantially the manner described in the information. . . . Despite this general principle, however, both this court and our Supreme Court have made clear that [t]he inclusion in the state's pleading of additional details concerning the offense does not make such allegations essential elements of the crime, upon which the jury must be instructed. . . . Our case law makes clear that the requirement that the state be limited to proving an offense in substantially the manner described in the information is meant to assure that the defendant is provided with sufficient notice of the crimes against which he must defend. As long as this notice requirement is satisfied, however, the inclusion of additional details in the charge does not place on the state the

---

[4] We analyze the defendant's claim under the federal constitution only because, although he raised a claim under our state constitution, he failed to brief his state constitutional claim. Analysis rather than mere assertion of a claim is required. See *State* v. *Culver*, 97 Conn. App. 332, 344 n.11, 904 A.2d 283, cert. denied, 280 Conn. 935, 909 A.2d 961 (2006).

additional obligation to prove more than the essential elements of the crime." (Citations omitted; internal quotation marks omitted.) *State* v. *Sam*, 98 Conn. App. 13, 38, 907 A.2d 99 (2006); see also *State* v. *Killenger*, 193 Conn. 48, 51–52, 475 A.2d 276 (1984).

In this case, with respect to count two, alleging criminal possession of a *firearm*, and count three, alleging stealing a *firearm*, the defendant was on notice of the crimes charged against him. The critical language of the charge was the use of the word *firearm*, which is the operative word in the statutes under which the defendant was charged. Furthermore, the defendant has not demonstrated on appeal how, if at all, he was prejudiced in defending against the crimes with which he was charged on the basis of a detail in the long form information.

For these reasons, we conclude that there was sufficient evidence before the jury by which it could have found the defendant guilty of the crimes charged and that he was not denied due process of law.

II

The defendant's second claim is that the court denied him the right to a fair and impartial jury by refusing to question, or dismiss, a juror whom, at the end of the defendant's case, the defendant claimed to have recognized.[5] We disagree.

The following facts are relevant to the defendant's claim. After the defense had rested, the defendant informed the court that he "might know" one of the jurors, but he could "not recall [from] where." The court responded: "[The defendant] was present when [the juror] was selected and questioned by both [the prosecutor] and [defense counsel]. [The juror] had an opportunity to observe [the defendant], both when the case

---

[5] We decline to identify the juror by name to protect the juror's right to privacy. See *State* v. *Dorans*, 261 Conn. 730, 749 n.23, 806 A.2d 1033 (2002).

was introduced during voir dire and during the individual questioning and was asked whether he knew [the defendant] or anyone else connected with the case and indicated that he did not. I think the voir dire process took long enough. The individual questioning process took long enough so that both [the juror] and [the defendant] had sufficient time to observe each other and, were there some connection, to recognize it and bring it up then. So, it is good that you brought it to our attention. We have it on the record now, but I do not propose to take any further action because I think there was sufficient opportunity for the juror to bring to our attention any connections he might have with [the defendant], however remote they might be." Defense counsel then asked that the juror be excused, but the court denied the request.

Our review of the transcript reveals that the following transpired during selection of the jury. When the venire panel was brought into the courtroom for introductions, the court had the defendant stand and face the prospective jurors. The prosecutor and defense counsel informed the prospective jurors of the witnesses whom they intended to call. Defense counsel told the venire panel that the defendant might testify and provided the jurors with information about him. He also asked the members of the panel to inform the court if they knew the defendant. The court instructed the venire panel that the jury had to be impartial to be fair to both the defendant and the state and asked them to inform the court if they knew the defendant or any of the potential witnesses. One prospective juror informed the court that he recognized the defendant and was excused. We therefore conclude that the court properly determined that the prospective jurors had an adequate amount of time to observe the defendant to assess recognition.

During the individual voir dire of the person in question, defense counsel questioned him first. In response

to questions from defense counsel, the juror indicated that he did not know the defendant. The prosecutor thoroughly questioned the juror about the process of being a fair and impartial juror. Both counsel obviously found the individual acceptable to serve on the jury. At the time, the defendant voiced no objection.

"Jury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution [of Connecticut, article first, § 8, and by the sixth amendment to the United States constitution] . . . . [T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors." (Internal quotation marks omitted.) *State* v. *Necaise*, 97 Conn. App. 214, 222, 904 A.2d 245 (2006).

The defendant's claim is that the juror's impartiality was tainted by his claimed prior knowledge of the defendant. "[I]n *State* v. *Ross*, 269 Conn. 213, 247, 849 A.2d 648 (2004) (en banc), [our Supreme Court] held that the traditional juror misconduct inquiry set forth in *State* v. *Brown*, 235 Conn. 502, 668 A.2d 1288 (1995) (en banc), is inapplicable to situations in which the allegations are that a venire panel has been tainted prior to voir dire. In *Ross*, our Supreme Court stated: When an allegation is made . . . that a venire person has been tainted, voir dire itself provides a means to uncover bias. Therefore, such an allegation does not necessarily require an independent inquiry by the court. Although we recognize that . . . there may be circumstances in which the trial court perceives a need for an inquiry exceeding the scope of voir dire, we conclude that, as in *Brown*, the form and scope of the court's inquiry, if any, into possible taint of a venire panel before voir dire depends on the circumstances of the case and it is to be determined by the trial court within the exercise of its discretion." (Internal quotation marks omitted.) *State* v. *Vazquez*, 87 Conn. App. 792, 805–806,

867 A.2d 15, cert. denied, 273 Conn. 934, 875 A.2d 544 (2005).

On the basis of our review of the record and the law, we conclude that the court did not abuse its discretion by declining to question the member of the jury in response to the defendant's wholly unsubstantiated claim that he "might know" the juror. The defendant failed to provide a specific basis on which the court could base an inquiry, as the defendant himself could not recall why the juror looked familiar. The juror had an opportunity to view the defendant when he was introduced to the venire panel and in response to a direct question from defense counsel indicated that he did not know the defendant. The court properly exercised its discretion in determining that the circumstances of this case required no inquiry beyond voir dire to uncover juror bias.

The judgment is affirmed.

In this opinion the other judges concurred.