STATE OF CONNECTICUT *v.* GLENDON THORNTON
(AC 28170)

McLachlan, Lavine and Mihalakos, Js.

Argued November 13, 2008—officially released February 17, 2009

*Steven D. Ecker*, with whom, on the brief, were *James T. Cowdery* and *Lewis H. Chimes*, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John M. Waddock*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. Connecticut is unique in that its constitution and statutes provide a right in criminal cases to question each venireperson individually; see Conn. Const., art. I, § 8;[1] Conn. Const., art. I, § 19;[2] outside the presence of other venirepersons. See General Statutes §§ 54-82f and 54-84g; see also *State* v. *Robinson*, 237 Conn. 238, 247 n.9, 676 A.2d 384 (1996). The purpose of such voir dire is to enable the court to determine whether the venireperson is qualified to serve on the jury and to assist the parties in the informed exercise of peremptory challenges. See *State* v. *Barnes*, 16 Conn. App. 333, 339, 547 A.2d 584 (1988). To protect a party's constitutional right to individual voir dire, the court should allow counsel a reasonable degree of latitude to ask meaningful, probing questions about venirepersons' beliefs and attitudes, particularly when a case involves

---

[1] The constitution of Connecticut, article first, § 8, provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . in all prosecutions by . . . information, to a speedy, public trial by an impartial jury. . . ."

[2] The constitution of Connecticut, article first, § 19, as amended by article four of the amendments, provides in relevant part: "The right of trial by jury shall remain inviolate . . . . In all . . . criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate."

charges that a member of the community might be reluctant to discuss frankly. The issue in this appeal is whether, under the specific facts of this case involving an allegation of male on male sexual assault and in light of the particular questions asked, the court denied the defendant his constitutional right to question potential jurors regarding their feelings about homosexuality.

The defendant, Glendon Thornton, appeals from the judgment of conviction, rendered after a jury trial, of unlawful restraint in the second degree in violation of General Statutes § 53a-96[3] and sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2).[4] On appeal, the defendant claims that the court denied him his state constitutional and statutory[5] rights to question members of the venire panel individually about their views of homosexuals and homosexual conduct. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At the time of the events in question, the victim was a twenty year old Quinnipiac University student majoring in marketing who aspired to become a producer of plays.[6] One of his favorite television shows

[3] General Statutes § 53a-96 (a) provides that "[a] person is guilty of unlawful restraint in the second degree when he restrains another person."

[4] General Statutes § 53a-73a (a) provides in relevant part that "[a] person is guilty of sexual assault in the fourth degree when . . . (2) such person subjects another person to sexual contact without such other person's consent . . . ."

[5] The constitutional right to individual voir dire is incorporated in our General Statutes and rules of practice. See General Statutes § 54-82f ("[i]n any criminal action tried before a jury, either party shall have the right to examine, personally or by his counsel, each juror outside the presence of other prospective jurors as to his qualifications to sit as a juror in the action, or as to his interest, if any, in the subject matter of the action, or as to his relations with the parties thereto. If the judge before whom the examination is held is of the opinion from the examination that any juror would be unable to render a fair and impartial verdict, the juror shall be excused by the judge from any further service upon the panel, or in the action, as the judge determines"); Practice Book § 42-12 (same).

[6] In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

was "Cops," a reality show that often dramatized incidents in which police officers placed handcuffed suspects in the backseat of a police car.

On Saturday, September 10, 2005, the victim took a train from New Haven to New York City to see a Broadway play. After meeting members of the cast at the stage door after the play, the victim returned to New Haven via train, arriving at Union Station (station) at approximately 1:10 a.m. on Sunday, September 11, 2005. The victim missed the 1:15 a.m. shuttle bus from the station to the university's Hamden campus and was waiting for the 1:55 a.m. shuttle when the defendant, an Amtrak police officer, approached him and struck up a conversation. The defendant[7] was dressed in his Amtrak police uniform and wore a badge that identified him. They exchanged pleasantries about college life and experiences. The defendant asked the victim if he had a girlfriend. When the 1:55 a.m. shuttle failed to arrive, the victim stated that he would take a taxicab to the university. The defendant volunteered to drive the victim to the campus, an offer the victim accepted in order to save the $30 taxicab fare.[8]

---

[7] The defendant was twenty-nine years old and married. At the time of trial, the defendant was the father of an eleven week old child. He has an associate's degree from Johnson and Wales University. He had been an Amtrak police officer for two years, following two years of employment as an Amtrak ticket taker. On September 10 and 11, 2005, he was working the 8 p.m. to 8 a.m. shift. His responsibilities were to patrol Amtrak facilities, tracks, stations and maintenance areas between New Haven and Springfield, Massachusetts, and New Haven and Clinton.

[8] At trial, the defendant testified that after he initially saw the victim waiting for the shuttle, the defendant left the station and inspected the tracks near the tunnels adjacent to Interstate 95 in East Haven and the Amtrak repair facility in Hamden. When he returned to the station, Doris Mitchell, a New Haven parking authority security guard, told him that he needed to speak to the victim. Mitchell testified that the victim had been screaming and slamming the telephone. The defendant approached the victim and learned that the victim had missed the shuttle bus. The defendant offered to take the victim to the university. They left the station at approximately 2:20 a.m. Due to traffic congestion on Interstate 91, the defendant exited the highway to take State Street to Hamden. As he passed the Amtrak

The two men got into a white sport utility vehicle marked with Amtrak police insignia. The defendant drove out of the station and entered Interstate 91 traveling north. The victim was familiar with the route to the university and knew that the most direct route was to take exit ten from Interstate 91. Before reaching exit ten, the defendant informed the victim that he needed to patrol a railroad yard that had been plagued by burglaries and took an exit from Interstate 91 with which the victim was unfamiliar. The defendant drove into an Amtrak railroad yard, continued to a narrow bridge that crossed the Quinnipiac River and down a gravel road. The defendant stopped in a dimly lit area and asked the victim if he had ever seen the back of a police car. The victim replied that he had not, and the defendant told him that he wanted to show him.

The defendant got out of the police car and walked to the rear passenger door. He took out a pair of handcuffs and told the victim that he wanted to demonstrate an arrest. The victim backed away, but the defendant, indicating that it was a joke, held out the handcuffs and key. The defendant moved behind the victim and put the handcuffs on him. After the victim was handcuffed, the defendant told him to sit in the backseat of the vehicle. After the victim sat down, the defendant asked him to lie down on the backseat to experience what it really is like to be placed in a police car after being arrested.

---

maintenance facility on Middletown Avenue, the victim expressed interest in seeing the facility. The defendant obliged the victim's request by driving through the facility. The defendant and the victim arrived at the victim's dormitory at approximately 2:45 a.m. As he was leaving the campus, the defendant heard a fire alarm and saw security personnel milling about. At trial, the defendant introduced evidence that the alarm at the university was received at 2:47 a.m. and cleared at 2:53 a.m. The defendant's investigator, Matthew Whalen, testified that he drove the route taken by the defendant on the night in question and made the trip from the station to the university campus in approximately twenty-four minutes. The defendant vehemently denied that he "arrested" or fondled the victim.

The defendant helped the victim get out of the car and told him that he usually searched a person whom he had arrested. The defendant then patted down the victim, starting at his torso and moving downward. When the defendant reached the area of the victim's genitals, he fondled the victim. Initially, the defendant fondled the victim through his clothing, but he subsequently unzipped the victim's trousers, reached inside and continued to fondle the victim between his outer clothing and his underwear. When the defendant finished, he removed the handcuffs from the victim, and both men got into the police car again. The defendant stated that "most people I search get aroused." The defendant then drove the victim to his dormitory at the university.

When he returned to his room, the victim was confused and spoke to his roommate, stating that he thought that he had been violated. On September 13, 2005, after speaking with his sister, a social worker, the victim filed a complaint with the university security department. After listening to the victim's complaint, the university security personnel contacted the New Haven police. The defendant was arrested and charged with kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A) and sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A). The jury found the defendant guilty of the lesser included offenses of unlawful restraint in the second degree and sexual assault in the fourth degree. The defendant was given a total effective sentence of two years in prison, execution suspended, and five years of probation.[9]

On appeal, the defendant claims that the court violated his right to individual voir dire by prohibiting him

---

[9] The court denied both the defendant's motion for a judgment of acquittal and his motion for accelerated pretrial rehabilitation.

from asking prospective jurors about their views of homosexuality. After reviewing the transcript, the parties' briefs and oral arguments, we conclude that the court did not deprive the defendant of his right to individual voir dire.

## I

## VOIR DIRE

Counsel for the parties interviewed fifty-seven venirepersons over four days of jury selection: June 19, 20, 27, and July 7, 2006. The claim on appeal arose during the first day of voir dire when counsel for the parties questioned five members of the venire panel. Of the first five venirepersons, two were excused for cause, one was excused by the state and two were selected to be members of the jury. The claim raised by the defendant occurred during defense counsel's voir dire of the fifth prospective juror, J,[10] which follows:

"[Defense Counsel]: This case is a male—an accusation of a male on male sexual assault. Is there anything about that type of accusation that would—you would feel uncomfortable sitting as a juror—

"[J]: No. . . .

"[Defense Counsel]: And do you know anything about or have you heard anything about male on male sexual assault cases or incidents?"

"[J]: No.

* * *

"[Defense Counsel]: Next question is that do you have any male friends or family, male family members who you know to be gay?

---

[10] To protect the privacy of the venireperson we refer to the individual by initial only. See *State* v. *Beavers*, 99 Conn. App. 183, 193 n.5, 912 A.2d 1105, cert. denied, 281 Conn. 925, 918 A.2d 276 (2007).

"[J]: Yes.

"[Defense Counsel]: And have you ever discussed issues of violence committed against gay men with them?

"[J]: No.

"[Defense Counsel]: And you know the terms 'in the closet' or 'out of the closet'?

"[J]: Yeah.

"[Defense Counsel]: In the closet meaning people who may be gay but aren't publicly, to the world, letting anyone know.

"[J]: Right.

"[Defense Counsel]: Do you know anyone who you think might or might not be sort of gay but not publicly out there?

"[J]: Yes.

"[Defense Counsel]: And kind of what kind of—what makes you think that they might be?

"[The Prosecutor]: Well, at this point, I think I'm going to *object to that question,* if Your Honor, please. I think that's going far field, and I object to it.

"The Court: You claim that, [defense counsel]? You claim that question?

"[Defense Counsel]: I do.

"The Court: Okay. Objection sustained.

"[Defense Counsel]: Do you think that there are people, males in the world, who are struggling with the fact that they are attracted to males?

"[The Prosecutor]: I'm going to *object to that question* as well, if Your Honor, please. Objection." (Emphasis added.)

The court excused J and stated that the line of questions had been asked before without objection and asked the prosecutor to articulate the objection. The prosecutor explained that he had intended to wait until the beginning of proceedings the next day to raise his objection to the questions "about males with regard to coming out of the closet, whether they are gay or not." He also articulated that unless defense counsel made an offer that those matters were an issue in this case, and the state was not aware of such evidence, the questions should not be introduced to the minds of prospective jurors. He asserted that it is improper to ask voir dire questions that pose factual information.

The court asked defense counsel to respond. Defense counsel disagreed with the prosecutor, explaining that this case was about a male on male sexual assault. His client was a married heterosexual man with a child, and the victim also claimed to be heterosexual. Defense counsel argued that he needed to know how the potential jurors feel about men who are struggling with their sexual identity, and how they will view the defendant and the victim. The court then asked defense counsel to explain how the questions related to the potential jurors' qualifications. Defense counsel responded that the questions were not intended to elicit reasons to excuse jurors for cause but that a male on male sexual assault case is different from a male on female sexual assault case. Counsel needed to know if prospective jurors were uncomfortable with homosexuality and if they would be trying to determine whether the defendant is attracted to men. Counsel conceded that homosexuality was not an element of the crime of sexual assault but argued that he needed to know how the jurors may think about the defendant.[11]

---

[11] Defense counsel argued in part: "I've never defended a same sex case; I've defended and prosecuted a number of male-female cases. People don't presume that. That issue was not an issue in those kinds of cases. I wouldn't have to go there in those kinds of cases. In this case, I do think and I—this is a different kind of case and they—whether or not—I think I do have to

The court sustained the prosecutor's objection, ruling that "the sexual orientation of either the defendant or the [victim] is not relevant to the jury's consideration here. This is an accusation of fact, and whatever may be the root motivation, I don't know about that. Look, if it was something that was in the case and the whole question of someone's struggling with their sexuality was . . . explicitly in the case, well, I . . . would permit some questions along those lines. But not on the present record. . . . The law in Connecticut is [that] you cannot test out jurors, sort of what their reaction is to the facts."

When J returned, defense counsel asked, "I take it that there is nothing about a same sex sexual assault, that allegation alone, that would make you uncomfortable about sitting and hearing the facts and the evidence and being fair to both sides." J agreed, and defense counsel turned to another line of inquiry. J later was accepted as a member of the jury.

The transcript reflects that defense counsel and the prosecutor continued to ask members of the venire panel whether they or anyone they knew had been the victim of or accused of a sexual assault and whether there was anything about homosexuality or a male on male sexual assault that would prevent them from being fair and impartial members of the jury. The court dismissed for cause venirepersons who had been or knew friends or family who had been the victims of sexual assault or who were uncomfortable sitting on a male on male sexual assault case.

---

voir dire on it because if these people, when they get there, even though it's not an element of the crime, are going to be thinking about those facts about the complaining witness, and they're going to think—be thinking about it about my client. And so I do think I do have—have to go there to a certain degree. I—it's a very difficult area for me to do. I'm very uncomfortable doing it, but I think in this case it's very, very important."

## II

## STANDARD OF REVIEW

"Our state constitution provides that in all . . . criminal actions tried before a jury, the parties shall have the right to challenge jurors peremptorily, with the number of such challenges to be established by law. Conn. Const., art. I, § 19. In addition, there is a statutory right to a voir dire examination of each prospective juror in a criminal action. See General Statutes §§ 54-82f, 54-82g. It is settled law in Connecticut that [t]he right to question each juror individually by counsel shall be inviolate. Conn. Const., art. I, § 19 [as amended by article four of the amendments]." (Internal quotation marks omitted.) *State* v. *Barnes*, supra, 16 Conn. App. 338. "[I]f there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his [or her] decision of the case, the party who may be adversely affected should be permitted questions designed to uncover that prejudice. This is particularly true with reference to the defendant in a criminal case." (Internal quotation marks omitted.) Id., 339.

In our state constitution, the meaning of the term "impartial jury" is "a jury that is: (1) composed of individuals able to decide the case solely on the evidence and apply the law in accordance with the court's instructions; and (2) properly selected from venire panels comprising a representative cross section of the community." *State* v. *Griffin*, 251 Conn. 671, 691–92, 741 A.2d 913 (1999). "[A]ll will agree that [the] jury should be indifferent and impartial; that they should be [individuals] whose minds are open to impressions which the facts and law in the case ought to make, so that there should be no combat with preconceived opinions in regard to the case. . . . [I]f a potential juror has such fixed and settled opinion of the case that he cannot judge impartially the guilt of the defendant, he

should not be selected to sit on the [jury] panel. . . . Where [however] a juror has a mere . . . impression, arising from facts supposed to exist, of the truth of which he has formed no opinion . . . there can be no ground to infer hostility or prejudice, and so the juror must be considered indifferent. To exclude persons on such grounds would be to adopt a rule not known to the common law . . . . It is enough if a juror is able to set aside any preconceived notions and decide the case on the evidence presented and the instructions given by the court. . . . Thus, [our Supreme Court previously has] recognized that the state constitutional right to trial by an impartial jury provides criminal defendants the common-law right . . . to challenge prospective jurors for cause and to have excused from service those venirepersons who are unable to set aside preconceived notions and decide the case solely on the evidence and in accordance with the court's instruction on the law." (Citations omitted; internal quotation marks omitted.) Id., 696.

A defendant will not prevail on appeal just because he might be correct in asserting that a prohibited line of questioning would have exposed potential bias. *State v. Smith*, 222 Conn. 1, 7, 608 A.2d 63, cert. denied, 506 U.S. 942, 113 S. Ct. 383, 121 L. Ed. 2d 293 (1992). "The latitude . . . afforded the parties in order that they may accomplish the purposes of the voir dire [however] is tempered by the rule that [q]uestions addressed to prospective jurors involving assumptions or hypotheses concerning the evidence which may be offered at the trial . . . should be discouraged . . . . [A]ll too frequently *such inquires represent a calculated effort on the part of counsel to ascertain before the trial starts what the reaction of the [venireperson] will be to certain issues of fact or law or, at least, to implant in his mind a prejudice or prejudgment on those issues. Such an effort transcends the proper limits of voir*

*dire and represents an abuse of the statutory right of examination."* (Emphasis added; internal quotation marks omitted.) *State* v. *Lugo,* 266 Conn. 674, 684, 835 A.2d 451 (2003). "Questions addressed to prospective jurors involving assumptions or hypotheses concerning the evidence which may be offered at the trial or instructions which may given by the court should be discouraged. . . . Both court and counsel should be alert to a duty to avoid a perversion of the privilege accorded to litigants by [§ 54-82f]." (Citation omitted; internal quotation marks omitted.) *State* v. *Van Valkenburg,* 160 Conn. 171, 173, 276 A.2d 888 (1970).

## III

## ANALYSIS

On appeal, the defendant claims that his "constitutional and statutory voir dire rights were violated in a criminal prosecution for a male on male sexual assault, when the trial court prohibited defense counsel in jury selection from asking prospective jurors any questions about their views concerning homosexual conduct . . . ." We conclude that the defendant overstates the scope of the court's ruling, which was predicated on the then existing record and limited to the specific questions asked. On the basis of our review of the voir dire transcript, we disagree that the court prohibited the defendant from asking prospective jurors any questions about their views concerning homosexual conduct in a male on male sexual assault case. The prosecutor did not object to defense counsel's questions regarding attitudes toward homosexuality in general. The prosecutor objected specifically to a question asking what made J think that a person might be gay but reluctant to be open about it and to a question about whether she thought that there were males who were struggling with the fact that they were attracted to males. The court sustained those objections, concluding that the

issue of struggling with sexual identity was not a factor in the case and that Connecticut law does not permit counsel to test a juror's reaction to facts. We agree with the state that those questions were too attenuated from the charges and conclude that the court properly sustained the prosecutor's objection to two questions that were unrelated to the issues in the case, were not based on undisputed facts and would have tested the prospective jurors' view of certain facts. The court therefore did not violate the defendant's constitutional and statutory rights to question venirepersons' views generally about homosexual conduct. Moreover, subsequent to the court's ruling, the parties conducted voir dire of forty-nine venirepersons with both counsel at times being permitted to ask whether there was anything about homosexuality or a male on male sexual assault that would prohibit them from being fair and impartial members of the jury.

In his brief, the defendant has cited a substantial number of legal and academic authorities and the popular press for the proposition that homosexuality is a controversial and divisive subject in our society. We agree, and our Supreme Court recently acknowledged that fact in *Kerrigan* v. *Commissioner of Public Health*, 289 Conn. 135, 175–76, 957 A.2d 407 (2008) ("gay persons historically have been, and continue to be, the target of purposeful and pernicious discrimination due solely to their sexual orientation"). We also agree with the defendant that a venireperson's attitudes, beliefs or prejudices toward or about sensitive issues that may prevent a person from being able to be a fair and impartial juror are appropriate *grounds for exploration.* In a case concerning a male on male, or female on female, sexual assault, relevant questions that delve into prejudices, beliefs and attitudes toward homosexuality should be permitted.

In determining whether the court in this case unduly restricted the defendant's constitutional and statutory rights, we begin by examining the question or questions that the court prohibited. See *State* v. *Lugo*, supra, 266 Conn. 674. The transcript discloses that the court did *not* prohibit defense counsel from asking venirepersons general questions regarding their attitudes toward homosexuality either before or after sustaining the prosecutor's objection to questions pertaining to "coming out of the closet" and how a venireperson knows that a man is struggling with his sexual orientation. In ruling, the court stated that it would permit questions about a man's struggles with his sexual orientation if defense counsel could demonstrate how that was an issue in the case. If defense counsel was uncertain of the scope of the court's ruling, he should have asked the court to clarify it. See id., 685. Having failed to seek a clarification, the defendant cannot now successfully claim prejudice.

A trial court abuses its discretion by limiting the scope of voir dire questions when it prohibits questions concerning the discovery of prejudices a juror might harbor.[12] In *State* v. *Barnes*, supra, 16 Conn. App. 333, the defendants were charged with burglary after entering the window of a residence in the early morning hours of December 26 and stealing gifts that were under a Christmas tree. Id., 335. During jury selection, defense

[12] In this case, the defendant claims that he was denied the state constitutional and statutory rights to conduct individual voir dire. In the situation in which an appellant claims that the court improperly prohibited the party from asking a particular question of a venireperson, we apply an abuse of discretion standard. In such a circumstance, "the question is not whether any one of us, had we been sitting as the trial judge, would have exercised our discretion differently. Our role as an appellate court is not to substitute our judgment for that of a trial court that has chosen one of many reasonable alternatives." (Internal quotation marks omitted.) *State* v. *Day*, 233 Conn. 813, 842, 661 A.2d 539 (1995). The defendant in this case does not claim that the court abused its discretion.

counsel asked prospective jurors whether " 'for religious or other reasons' " the fact that the alleged crime had occurred the day after Christmas would affect their ability to be fair and impartial. Id., 337. The state objected, and the court sustained the objection, noting that Christmas had nothing to do with the crimes charged. Id. This court reversed the defendants' convictions, concluding that the trial court had violated the defendants' right to a fair trial by prohibiting counsel from asking prospective jurors about Christmas, given the fact that it is a holiday "conspicuously celebrated to a greater or lesser degree throughout this country." Id., 339. Stealing Christmas gifts from under a tree "may to some be considered extremely offensive and may color [jurors'] ability to be fair, while it may not affect the perspective of others in any manner." Id., 340.

A trial court does not deny a defendant his state constitutional rights by limiting the scope of voir dire to general subjects as opposed to a fact specific inquiry. *State* v. *Lugo*, supra, 266 Conn. 674, was a felony murder case that arose from an attempted robbery involving rival gangs. Defense counsel posed questions to potential jurors about the Latin Kings gang. The court instructed defense counsel to refrain from asking members of the venire panel any questions about the Latin Kings, noting that "it was improper to elicit a prospective juror's reaction to a particular piece of evidence through voir dire questioning . . . ." Id., 682. On appeal to our Supreme Court, the defendant claimed that the trial court prohibited him from asking any questions related to gangs. Id., 684. Our Supreme Court stated that "it is quite clear from the record that the trial court precluded defense counsel only from asking questions concerning the Latin Kings, but that questions concerning gangs in general were not prohibited . . . ." Id.; but see id., 705 (*Borden, J.,* dissenting) ("rule against asking questions concerning various potential states of the evidence does not automatically prohibit questions

concerning undisputed facts that will be set forth at trial"). Here, the defendant has failed to distinguish *Lugo* from the facts of this case. The court's ruling was specific to the two questions to which the prosecutor had objected, did not relate to undisputed facts and did not preclude questions about homosexuality in general.

We note that in sustaining the prosecutor's objections, the court stated that sexual orientation was not relevant to the case. We disagree. Section 53a-73a (a) provides in relevant part that "[a] person is guilty of sexual assault in the fourth degree when . . . (2) such person subjects another person to sexual contact without such other person's consent . . . ." Sexual contact is defined as "any contact with the intimate parts of a person not married to the actor for the purpose of *sexual gratification* of the actor or for the purpose of degrading or humiliating such person . . . ." (Emphasis added.) General Statutes § 53a-65 (3). In a case of male on male sexual assault, sexual gratification could be evidenced by homosexual conduct. For that reason, it was appropriate for defense counsel and the prosecutor to inquire of the venirepersons' attitudes, beliefs and biases concerning homosexuality. Taken in context, however, we view the court's comment that sexual orientation was not relevant to this case as simply a statement of opinion, not part of its ruling, and not imposing any limitations on the defendant's opportunity to question prospective jurors. As previously noted, if defense counsel believed that the court's ruling was unclear, "it was defense counsel's obligation to seek further clarification"; *State* v. *Lugo*, supra, 266 Conn. 685; as to the ruling's scope. The court's comments, taken in context, cannot fairly be read to mean that the court would not have permitted a properly worded, focused inquiry had defense counsel asked appropriately relevant questions.

The judgment is affirmed.

In this opinion the other judges concurred.