******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* JAYSON MOTA-
ROYACELI
(AC 39187)

Lavine, Sheldon and Bishop, Js.

*Syllabus*

Convicted of the crime of manslaughter in the first degree, the defendant
appealed to this court. On appeal, he claimed that the trial court erred
in limiting his voir dire of the venire panel and improperly gave the jury
a Chip Smith instruction at an impermissibly coercive time. *Held*:

1. The defendant's claim that the trial court erred in limiting defense counsel's
   line of questioning of prospective jurors regarding the finality of the
   verdict was unavailing; that court properly determined that the ques-
   tioning regarding finality was improper, as it concerned the understand-
   ing of legal concepts and awareness of legal proceedings, rather than
   the probing of potential bias, and the defendant did not demonstrate
   that he was prejudiced by the court's ruling.

2. The defendant could not prevail on his claim that the Chip Smith charge
   given by the trial court on a Friday afternoon was impermissibly coer-
   cive; the evidence did not suggest that the jury was misled or coerced
   by the court's giving of the Chip Smith charge on a Friday afternoon,
   the charge was given in accordance with the language previously
   approved by our Supreme Court, the verdict was not reached until after
   the weekend on the following Monday, and the mere fact that one of
   the jurors had asked about scheduling was not enough to suggest that
   there was coercion.

Argued September 25—officially released December 18, 2018

*Procedural History*

Substitute information charging the defendant with
the crimes of manslaughter in the first degree and tam-
pering with evidence, brought to the Superior Court in
the judicial district of Hartford and tried to the jury
before *Kwak, J.*; verdict and judgment of guilty of man-
slaughter in the first degree, from which the defendant
appealed to this court. *Affirmed.*

*Lisa J. Steele*, assigned counsel, with whom, on the
brief, was *Stephen A. Lebedevitch*, assigned counsel,
for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney,
with whom, on the brief, were *Gail P. Hardy*, state's
attorney, and *Anthony Bochicchio*, senior assistant
state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Jayson Mota-Royaceli, appeals from the judgment of conviction rendered after a trial to the jury, on the charge of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1). The defendant claims that the trial court improperly (1) limited his voir dire of the venire panel and (2) gave the jury a Chip Smith instruction at an impermissibly coercive time. We affirm the judgment of the trial court.

The jury was presented with evidence of the following facts. The defendant and the victim worked together and attended the wedding reception of one of their coworkers. During the course of the night, the victim touched the defendant's buttocks, causing the defendant to get angry. The victim tried to fight the defendant, but the defendant did not want to fight. After they separately left the reception, there was phone communication between the two, and they ultimately drove to and met in a parking lot. After a discussion, the defendant returned to his car, and after getting in, he thought that he saw the victim with a firearm, and drove the car into the victim, killing him. No gun was found on the scene. Following the trial, the defendant was convicted of one count of manslaughter in the first degree in violation of § 53a-55 (a) (1) and acquitted of two counts of tampering with evidence in violation of § 53a-155 (a) (1).[1] This appeal followed.

I

The defendant claims that the court erred in limiting defense counsel's line of questioning of prospective jurors regarding the finality of their verdict. Specifically, the defendant argues that without being allowed to pursue this line of questioning, "there [was] an impermissible risk that one or more jurors entertained a belief that the ultimate task of determining whether the defendant is guilty or not could be corrected in a higher court." We are unpersuaded.

Jury selection for the defendant's trial began on October 22, 2015. During voir dire, defense counsel's line of questioning included inquiries regarding the finality of a jury's verdict.[2] After the state objected, the court allowed the line of questioning but ordered defense counsel to reword the questions. The next day, however, upon reconsidering the state's objection, the court precluded defense counsel from asking venirepersons whether they believed that their verdict as jurors would be final. The defendant argues that the court erred in precluding this line of questioning, and that in doing so, the court deprived the defendant of his right to inquire into potential bias. We disagree.

"Voir dire plays a critical function in assuring the criminal defendant that his [or her] [s]ixth [a]mendment right to an impartial jury will be honored. . . . Part of the guarantee of a defendant's right to an impartial jury

is an adequate voir dire to identify unqualified jurors. . . . Our constitutional and statutory law permit each party, typically through his or her attorney, to question each prospective juror individually, outside the presence of other prospective jurors, to determine [his or her] fitness to serve on the jury. . . . Because the purpose of voir dire is to discover if there is any likelihood that some prejudice is in the [prospective] juror's mind [that] will even subconsciously affect his [or her] decision of the case, the party who may be adversely affected should be permitted [to ask] questions designed to uncover that prejudice. This is particularly true with reference to the defendant in a criminal case. . . . The purpose of voir dire is to facilitate [the] intelligent exercise of peremptory challenges and to help uncover factors that would dictate disqualification for cause." (Citations omitted; internal quotation marks omitted.) *State* v. *Edwards*, 314 Conn. 465, 483, 102 A.3d 52 (2014).

It is well settled that "[t]he court has wide discretion in conducting the voir dire . . . and the exercise of that discretion will not constitute reversible error unless it has clearly been abused or harmful prejudice appears to have resulted." (Citations omitted.) *State* v. *Dahlgren*, 200 Conn. 586, 601, 512 A.2d 906 (2009).

"A defendant will not prevail on appeal just because he might be correct in asserting that a prohibited line of questioning would have exposed potential bias." *State* v. *Thornton*, 112 Conn. App. 694, 705, 963 A.2d 1099, cert. denied, 291 Conn. 914, 970 A.2d 727 (2009). "We have repeatedly stated that a juror's knowledge or ignorance concerning questions of law is not a proper subject of inquiry on voir dire." *State* v. *Dahlgren*, supra, 200 Conn. 601.

As an initial matter, we reject the defendant's characterization of the prohibited inquiry as relating to "bias." The term "bias," as commonly used, refers to a predisposition or tendency to view a person or circumstance in an unfair way. The trial court determined that the questioning regarding finality was improper, as it concerned the understanding of legal concepts. We agree with this determination, as the line of questioning by defense counsel improperly inquired into legal knowledge. Although the defendant argues that the questions were not improper questions of law, he emphasizes the importance of gauging a venireperson's "aware[ness] of the possibility of post-conviction proceedings." We fail to see the distinction between improper questions regarding a venireperson's knowledge of law, and the questions that the defendant sought to ask. These questions did not probe potential bias but, rather, inquired into a venireperson's awareness of legal proceedings.

Additionally, the defendant has failed to demonstrate that he was prejudiced by the court's ruling. The defendant argues that prejudice arose from the risk that a

juror might have believed that a higher court could correct an improper verdict. This argument is speculative as there is no evidence in the record to support it. We therefore reject the defendant's claim.

## II

The defendant's second claim is that the Chip Smith[3] charge, given at 4 p.m. on the Friday before Thanksgiving, was impermissibly coercive.[4] Additionally, the defendant argues that the charge was coercive as the jury had questioned the schedule for the following week and one of the jurors had a doctor's appointment on Monday. We are unpersuaded.

After the close of evidence and final arguments, the court charged the jury on Tuesday, November 17, 2015. On Friday, November 20, 2015, prior to lunch, the jury sent a note to the court indicating that it was unable to come to an agreement and requested instruction from the court about the state's burden of proof. The state then requested that the Chip Smith charge be given at once, providing the jurors the opportunity to think about it over lunch, rather than giving them the charge late on a Friday. Defense counsel, however, stated that giving the Chip Smith charge at that time would be "putting the cart before the horse . . . ." After explaining to the jury that the court would not give further instruction, the court sent the jury back to deliberate further without giving them the Chip Smith charge.

Later in the day, the jury sent out another note indicating it had reached a verdict on count two but was deadlocked on the other two counts. Defense counsel objected to giving the Chip Smith charge, noting that it was 4 p.m. on a Friday, and asked that the court accept the jury's verdict on count two and declare a mistrial on the other two counts or alternatively modify the language in the Chip Smith charge. The court denied the request and gave the standard Chip Smith charge. Shortly after the charge was given, one of the jurors spoke to the court's clerk expressing concern about a doctor's appointment the juror had scheduled for 12:30 p.m. on Monday. The juror was told that "they [the jury] would have to be [there in court] regardless." On Monday, November 23, 2015, at 11:07 a.m., the jury sent out a note indicating that it had reached a verdict on all three charges.

"A jury that is coerced in its deliberations deprives the defendant of his right to a fair trial under the sixth and fourteenth amendments to the federal constitution, and article first, § 8, of the state constitution. Whether a jury [was] coerced by statements of the trial judge is to be determined by an examination of the record. . . . The question is whether in the context and under the circumstances in which the statements were made, the jury [was], actually, or even probably, misled or

coerced. . . . The court must consider [the jury instructions] from the standpoint of their effect upon the jury in the context and under the circumstances in which they were given." (Citation omitted; internal quotation marks omitted.) *State* v. *Daley*, 161 Conn. App. 861, 866, 129 A.3d 190 (2015), cert. denied, 320 Conn. 919, 132 A.3d 1093 (2016).

Upon review of the record, the evidence does not suggest that the jury was misled or coerced by the court's giving of the Chip Smith charge on Friday afternoon. The charge was given in accordance with the language approved by our Supreme Court. See *State* v. *O'Neil*, 261 Conn. 49, 51, 801 A.2d 730 (2002). Furthermore, although the charge was given at 4 p.m. on a Friday,[5] the verdict was not reached until after the weekend, at 11:07 a.m. on Monday. The mere fact that a juror asked about scheduling is not enough to suggest that there was coercion. We cannot conclude that, in the context and under the circumstances in which the charge was given, the jury was, actually or even probably, misled or coerced. We therefore reject the defendant's claim and affirm the judgment of the trial court.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The tampering charges arose from the defendant's conduct in moving the vehicles after hitting the victim with his car and the fact that his cell phone was never recovered.

[2] Defense counsel questioned the venireperson who was chosen as the first juror as follows:

"Q. Do you think that a jury's decision in a criminal case is a final decision?

"A. Please repeat that.

"Q. Do you think that the jury's verdict, I should say, their verdict is a final decision? Meaning that it's not going to change the judge having just the responsibility of punishment in the event of conviction, he doesn't sit as a seventh juror. It's up to the jury.

"A. Correct.

"Q. Do you agree that the jury's verdict is final?

"A. Well, as I understand, I mean, I'm not a lawyer, as I understand it, the—if someone is convicted, they would have a right to appeal if something, they didn't think something was right, maybe it was something that the jury didn't get to hear and they want to bring that to the attention of the judge or the court and say, wait, wait, I think this should have been allowed in and it wasn't.

"Q. Here's what I'm getting at: Do you think your decision, ultimately if you get it wrong, as the jury, whichever way it is, that somehow that'll be corrected so you don't have to worry about it. Or do you think, no, it's going to be given weight and effect, your decision is final?

\*\*\*

"Q. If the jury—you know that there's an appeal process and in that.

"A. Right.

"Q. That's not something that you can concern yourself with.

"A. Right.

"Q. What I'm really getting at is the jury's decision is given weight and effect by this judge and any other.

"A. Correct.

"Q. And it's not going to be changed because someone disagrees with the jury.

"A. Correct.

\*\*\*

"Q. Because if the jury thinks, hey, look, if we get it wrong, someone will—

"A. Let's just do this now and someone else will fix it later?

"Q. Right.

"A. No, no, no, no. It's the jury's—otherwise, it's a waste of our time."

[3] "A Chip Smith instruction reminds the jurors that they must act unanimously, while also encouraging a deadlocked jury to reach unanimity." (Internal quotation marks omitted.) *State* v. *O'Neil*, 261 Conn. 49, 51 n.2, 801 A.2d 730 (2002). We note that the instruction given in the present case followed the language as set forth and approved in *O'Neil*. Id., 74–75. The defendant does not challenge the wording of the charge.

[4] The defendant argues that this alleged impermissibly coercive timing of the Chip Smith charge bolsters the alleged risk discussed in part I of this opinion that a juror might have believed that a higher court could correct an improper verdict. This argument is undermined by the fact that defense counsel was able to freely question each member of the venire panel about the pressure of holding a minority position in deliberations:

"Q. Let's suppose you're chosen for the case. You go back into the deliberation room. You discuss the case, take a vote and ultimately whichever way it is, you are in the minority. It's five to one. How do you think you'd handle that situation?

"A. Yeah, I can only imagine how much pressure that would be, but if it was truly five to one, I guess it would be five to one.

***

"Q. And you mentioned the pressure. You know, let's suppose it's five o' clock on a Friday afternoon and if you don't return a verdict, you've got to come back on Monday. Are you someone who thinks you might cave in and change your mind simply to—

"A. Not at all, no.

[5] Notably, defense counsel objected to the state's proposal to give the Chip Smith charge after the jury sent its first note to avoid the charge being given late on a Friday.

—————————————————————